THEODORE WEILAND, Assignee, v. JACOB KREJNICK and Others.[1]

December 24, 1895.

Nos. 9639-9767—(224–225).

**Grain—Sale or Bailment.**

> Evidence considered, and *held* not to justify the finding of the trial court that the delivery of grain into an elevator by the defendants, under the circumstances disclosed, constituted a sale, and not a bailment.

Action in the district court for Scott county by Theodore Weiland, as assignee of Frank Nicolin, insolvent, to determine the rights of all parties to wheat received in his elevator at New Prague by the insolvent before the assignment. Defendant Krejnick and certain other defendants had previously instituted replevin actions for part of the wheat. The evidence is stated in the opinion. The court, Cadwell, J., found as facts, among other things, that the said Nicolin was not a warehouseman within the meaning of Laws 1876, c. 86, (G. S. 1894, §§ 7645–7652) and did not receive said wheat for the purpose of storing the same in said elevator at New Prague, but for the purpose of shipping the same to his mill at Jordan and manufacturing the same into flour; that the wheat in controversy in these actions on the delivery thereof to said elevator became the property of the said Nicolin, and on his assignment for the benefit of his creditors the title thereof passed to and became vested in his assignee for the benefit of his creditors. As conclusion of law the court found that plaintiff assignee was entitled to all the wheat in controversy, and directed judgment in his favor. From an order denying motions for a new trial defendant Krejnick and the other defendants who had instituted replevin suits, and defendant Lyons and others, being all the other defendants, appealed. Reversed.

*Southworth & Coller*, for replevin appellants.

*Frank Warner* and *C. E. Vanderburgh*, for other appellants.

*James McHale* and *Davis, Kellogg & Severance*, for respondent.

MITCHELL, J. This case, like that of Weiland v. Sunwall, infra, p. 320, 65 N. W. 628, grows out of the failure of plaintiff's assignor,

[1] Reported in 65 N. W. 631.

Nicolin, but involves the title to the grain in another elevator, situated at New Prague; and there is no suggestion in either case that the adjustment of the rights of parties to the grain in the one elevator is at all dependent upon or connected with the adjustment of the rights of parties to the grain in the other elevator. The evidence in the two cases is also very different, and in the present case the claimants of the grain against the assignee all belong to the same class, which we will call "ticket holders"; and the evidence is the same as to all of them.

In this case, as in the other case, after Nicolin's assignment, some of the ticket holders brought replevin actions, in which they took possession of the wheat in the elevator. Thereupon the assignee, as in the other case, brought an action in equity, to which he makes all the claimants defendants, for the purpose of determining the rights of all parties; and, as in the other case, the replevin suits were consolidated with the equity case, it being stipulated that the determination of it should be a final determination of all the suits.

The sole question in the case is whether the contract under which the defendants delivered their wheat into the elevator constituted a sale or a bailment.

The elevator was owned and operated by Nicolin at New Prague, 12 miles distant from Jordan, where his mill was. It appears in evidence that his object in operating this elevator was to procure wheat for his mill at Jordan, and that all the wheat taken into the elevator, except a few car loads sent to Minneapolis, was shipped to the Jordan mill, and there ground up; that the elevator had been operated in this way for a number of years, and this was generally known throughout the community tributary to New Prague; that during all that time no one had ever demanded a return of the grain delivered into the elevator, but they had always presented their tickets when they saw fit, and received for their wheat the market price on the day when the tickets were presented; also, that Nicolin never charged storage, and that no contract, at least no express contract, was ever made for charging storage. So far the evidence is not dissimilar to that in the other case, but otherwise the evidence in the two cases was wholly dissimilar.

The business of the elevator was entirely conducted by one Schlosser, whose testimony was practically all the evidence there was

as to the manner in which the business was conducted, and as to the contracts with those delivering wheat into the elevator. He had entire charge of receiving the wheat, and of paying for it. The substance of his testimony is that when a party brought wheat to the elevator, if he "wanted to sell, I paid him cash for it, and, if he didn't, I gave him a ticket"; if he wanted cash, I issued no ticket; that he asked everybody that brought wheat if he wanted to sell. If he said "Yes," I had the cash ready for him; if he said "No," I wrote him a ticket. The tickets issued in such cases were all in the following form, with the blanks properly filled: "New Prague Elevator, New Prague, Minn. Frank Nicolin, Proprietor. Ticket No. ——. Inspected ——. Account of —— or bearer, —— Bushels No. —— Wheat. [Signed] Frank Nicolin, per ——." All of the defendants hold tickets of this kind, and we must assume that they delivered the wheat and received their tickets under the circumstances as above testified by Schlosser, to wit, that they were asked if they wanted to sell, and replied "No," and took their tickets.

There is evidence tending to prove that Nicolin was accustomed to use all the wheat in the elevator as his own, and ship it down to his mill as he needed it, without regard to the amount of outstanding tickets. While, perhaps, it is fairly inferable that the defendants knew that Nicolin was accustomed to ship wheat from the elevator to his mill, yet there is no evidence that they knew that he shipped more than he had bought and paid for, or that he did not always keep an amount of wheat in the elevator equal to the amount of outstanding tickets. In fact, there is no evidence that the defendants had ever before delivered wheat at this elevator, or that they knew anything about the manner of conducting the business, except in the case of their own individual transactions, unless they are to be charged with such knowledge from the fact that Nicolin's manner of conducting his business was generally known in the neighborhood,— a kind of evidence which may sometimes be competent and of value, by way of corroboration, when the other evidence is conflicting, but very dangerous, as well as insufficient, upon which alone to establish an implied contract in accordance with the manner in which one of the parties conducts his own business.

Where a farmer or other person brings a load of wheat to a grain elevator, and is asked if he wishes to sell, and replies "No," and then

deposits his wheat in the elevator, and takes a ticket for it, it would be exceedingly dangerous, and would practically nullify the provisions of the statutes protecting depositors of grain, to convert the transaction into an implied contract of sale on any such evidence of custom or usage on part of the owner of the elevator or warehouse. Unrebutted or unmodified by other evidence than there is in this case, such a transaction must be held to be a bailment, and not a sale. The fact that the depositor may have expected at some future time to sell his wheat to Nicolin, or that he may have known that Nicolin intended to buy the wheat for the use of his mill, and, in view of that fact, did not charge storage, is not of itself enough to justify the inference that the transaction was intended a present sale, in the face of the express statement of the depositor that he did not want to sell, and the further fact that nothing else was said about a sale. All of the facts were entirely consistent with the idea that the intention, as well as the implied agreement, was that until the owner was ready to sell, and did sell, the grain should remain on deposit as his property. It is hardly necessary to add that, if these transactions constituted bailments, the depositors who instituted replevin acquired no priority over those who did not.

Our conclusion being that the findings of fact were not justified by the evidence, the order appealed from is reversed, and new trial granted.