W. S. JACKSON v. ERIC SEVATSON.

April 26, 1900.

Nos. 12,004—(37).

### Conversion of Grain—Evidence.

Certain persons placed wheat in a grain warehouse owned and operated by one E.; receiving wheat tickets, so called, therefor. In an action against a third party as for conversion of this wheat, it is *held* that the evidence was abundant to support a finding that, as between the depositors and E., the transactions were bailments of the wheat, and not sales thereof, and, as a consequence, that title to the property did not pass to E.

### Demand before Action.

After the wheat had been shipped by E. on defendant's order, and for his benefit, these depositors demanded of E. that he return the wheat or make payment therefor, which demand was refused. In his answer in this action, and at the trial, defendant asserted title to the wheat on the ground that he had purchased the same, and denied that the depositors or plaintiff, as their assignor, were owners. *Held*, that a sufficient demand had been made prior to instituting the action.

### Assignment of Chose in Action—Consideration to Be Paid.

The assignments of the depositors' claims or choses in action against defendant on account of the alleged conversion were full and complete, except that in each was a clause that plaintiff was to pay the assignor when he collected the value of the wheat from defendant, and just what he collected, less such charges and expenses as he paid or incurred in collecting. *Held* valid assignments, as between the depositors, the plaintiff, and the defendant, and that the plaintiff was the real party in interest in this action.

Action in the district court for Cottonwood county to recover

$518.15 and interest for conversion. The case was tried before P. E. Brown, J., and a jury, which rendered a verdict in favor of plaintiff for $458.88. From an order denying a motion for a new trial, defendant appealed. Affirmed.

O. *Mosness*, for appellant.

*Wilson Borst*, for respondent.

COLLINS, J.

Action by plaintiff, as the assignee of several persons who were the original owners of certain wheat, to recover the value thereof, on the ground of an unlawful conversion by defendant to his own use, in which the verdict was against the latter.

1. By the testimony it was conclusively established that for some years prior to 1897 one Ewert was the owner of a grain warehouse on a line of railway in the southern part of the state, and engaged in operating the same as a warehouseman, and as a purchaser of wheat for himself and for defendant. He had control of the warehouse, bought wheat for himself as well as for defendant, and had the benefit of the storage, if any. To use the language of defendant when testifying:

"I was to have the wheat I paid for with my money. That was my grain, and I was to ship it out within fifteen days, or else I was to pay him storage."

In other words, such wheat as was purchased by Ewert and paid for with defendant's money became his property, and no storage charges were to be made by Ewert unless it remained in the warehouse more than fifteen days. Ewert's methods of doing business were those customary in such cases. If the wheat placed in the warehouse was purchased outright, tickets were issued directed to Ewert Bros., in which were specified the number of bushels, the grade, the price per bushel, the total sum due, and to whom payable. If no sale was made, but the wheat was stored or deposited in the warehouse, the same form of tickets was issued, but no price was stated or agreed on. The price or amount to be paid was to be determined when the depositor actually made sale.

These tickets were not in the form of those considered in Weiland v. Krejnick, 63 Minn. 314; 65 N. W. 631, but there was no

practical difference. Nor did they contain the option clause made a part of the ticket or receipt involved in State v. Rieger, 59 Minn. 151, 60 N. W. 1087; but as was said, in substance, in that opinion, it was never contemplated that the wheat represented by the tickets was to become the property of another person until a price was agreed upon and payment made. The evidence was abundant to support a finding that as between the depositors of the wheat, plaintiff's assignors, and Ewert, who owned and operated the warehouse, these transactions were nothing but bailments. They were not sales, and consequently title to the property did not pass out of the depositors.

2. When Sevatson refused to furnish money to Ewert with which to pay for wheat which had previously been deposited in the warehouse, including that in controversy, there were several hundred bushels on hand. The defendant asserted title to it, and put an agent in charge. The depositors demanded of Ewert that he return the wheat represented by the tickets, or that he pay its value. He could not pay, and then aided these depositors in forcing an entrance into the warehouse. The latter then removed all of the wheat on hand, which amounted to 58 per cent. of the number of bushels previously deposited. The balance of the wheat deposited by plaintiff's assignors, 42 per cent. of the total, is represented by the tickets introduced in evidence. No grain remained, for the balance of that deposited had previously been shipped by Ewert on defendant's order.

Counsel for defendant urges that until a demand was made, and his client given an opportunity either to pay the market price or to return the wheat, no action would lie as in conversion. It is an answer to this claim to say that the original owners deposited their wheat with Ewert, not with defendant; that a demand was made of him; and that he, as defendant's agent, had unlawfully shipped it to other agents for defendant, so that the latter finally got the benefit of this wheat without paying for it, as he was to do under his contract with Ewert in order to become owner. And, further than this, he asserted full and complete title to the property in his answer, and insisted upon ownership at the trial. Under all the circumstances, a demand upon him for payment or a

return of the converted property, after demand upon Ewert, was unnecessary. At best, it would have been mere ceremony.

3. The right to follow this grain into the hands of the defendant, and to maintain an action for conversion thereof, is undoubted. Hall v. Pillsbury, 43 Minn. 33, 44 N. W. 673.

4. Counsel strenuously contends that the assignments to plaintiff introduced in evidence over his objection are not valid in law, and, upon their face, show that the plaintiff is not entitled to recover, because he is not the real party in interest. This position is taken because in each of these assignments, which are otherwise ample and complete, is a clause that plaintiff is to pay when he collects from defendant, and just what he collects, less expenses and charges which he may pay and incur in making the collection. These clauses merely fixed and postponed the day of payment and the amount to be paid. The assignments were in proper form and irrevocable. They transferred the ownership of the claims and choses in action to plaintiff. The assignors agreed to wait for their money until plaintiff collected from defendant, and that they would then accept what he collected, less proper charges and expenditures in collecting. Subsequent to these assignments the depositors had no enforceable claims, as against defendant or any other party, on account of the transactions with Ewert. The cases cited by counsel from our own state are not in point. Rock County Nat. Bank v. Hollister, 21 Minn. 385, and Third Nat. Bank v. Clark, 23 Minn. 263. In these cases negotiable paper was indorsed "for collection," and the court held that as the indorsement was obviously restrictive, and only for collection, no title to the paper passed. But here it clearly appears that the assignors intended to part with all title and interest in and to their claims against defendant, without qualification or restriction. The assignments were sufficient as between the parties, and the plaintiff was the real party in interest in this action.

5. We have carefully examined the assignments of error not covered by what has hitherto been said. We find none that are well taken, or which need special notice.

Order affirmed.