## PETER SCOTT v. STATE OF NORTH DAKOTA.

### (L.R.A.1917F, 1107, 163 N. W. 813.)

**Trial court — refusal to advise verdict — not guilty — testimony — offered by defendant thereafter — motion not renewed — close of case — not error.**

1. Error cannot be predicated upon a refusal to advise a verdict of not guilty

---

Note.—On conviction for keeping common nuisance by proof of single sale of intoxicating liquor in violation of Prohibition Law, see annotation to case of Scott v. State, L.R.A.1917F, 1107.

at the close of plaintiff's case, when testimony is thereafter introduced by defendant, unless the motion is renewed at the close of all the testimony.

**Common nuisance — keeping and maintaining — intoxicating liquors — single sale — proof of — sufficient.**

2. A single sale will warrant a conviction under an information for keeping and maintaining a common nuisance by keeping a place where intoxicating liquors are sold as a beverage in violation of the Prohibition Law of this state.

Opinion filed June 7, 1917.

Appeal from the County Court of Ward County, *Murray,* J.

Defendant was convicted of the crime of keeping and maintaining a common nuisance in violation of the State Prohibition Law, and appeals.

Affirmed.

*E. T. Burke* and *J. E. Burke,* for appellant.

A defendant in a criminal case is entitled to have his case given to the jury under proper instructions as to the law, and where erroneous instructions are given, defendant has not had a fair trial.

Correct instructions given, but immediately followed by erroneous instructions, entitle defendant to a new trial, for no one can say upon which the jury based their verdict. State v. Kruse, 19 N. D. 207, 124 N. W. 385.

*Wm. Langer,* Attorney General, *D. V. Brennan,* and *G. K. Foster,* Assistant Attorneys General, and *O. B. Herigstad,* State's Attorney, and *R. A. Nestos,* Assistant State's Attorney, for respondent.

The charge of the trial court must be taken and considered as a whole, and not be separated into parts, which, when read alone, would be erroneous.

Where defendant requests the court to advise a verdict of not guilty, and then offers testimony, he cannot complain that the court overruled his request, unless he renews it at the close of the entire case. He is deemed to have waived such request. Buchanan v. Occident Elevator Co. 33 N. D. 346, 157 N. W. 122; Halvarson v. Lasell, 33 N. D. 613, 157 N. W. 682.

CHRISTIANSON, J. The defendant was tried and convicted of the crime of keeping and maintaining a common nuisance in violation of the

provisions of the prohibitory law of this state, and appeals from the judgment of conviction.

The first error assigned is predicated upon the denial of defendant's motion for an advised verdict of not guilty. The record shows that this motion was made at the close of plaintiffs' case in chief; that after the denial of the motion, defendant introduced evidence, and that the motion was not renewed at the close of all the evidence. Hence, under numerous decisions of this court, the error, if any, in the denial of defendant's motion for an advised verdict of not guilty, was waived. See Buchanan v. Occident Elevator Co. 33 N. D. 346, 157 N. W. 122; Halverson v. Lasell, 33 N. D. 613, 157 N. W. 682.

An examination of the evidence, however, also discloses that the trial court very properly denied the motion. The testimony clearly showed that the house involved herein was occupied by and under the control of the defendant. One David Franzen testified that during the months of January, February, and March, 1915, he frequented the house occupied by the defendant, about once a week, sometimes alone and sometimes in company with friends, and that during these visits he purchased beer from the defendant, paying him therefor 35 cents per bottle, or $1 for three bottles; that he purchased this beer both from the defendant and others in his presence, and that he and his friends drank the same upon the premises in the presence of the defendant, and that at times the defendant himself drank with them. Another witness, Henry Solberg, testified that he obtained beer from the defendant at the house in question, for which he (Solberg) paid 35 cents per bottle or $1 for three bottles; that he drank such beer on the premises. He further testified that he did not know where defendant obtained the beer, but that it was nice and cool "and suited him all right."

It is virtually conceded that this testimony, if true, is sufficient to establish the crime alleged. But it is asserted that the witness Franzen was not worthy of belief, and that his testimony should be disregarded. The credibility of this witness and the weight of his testimony was manifestly a question for the jury, and there is nothing in the record to justify a court in adjudging the same incredible as a matter of law.

The court instructed the jury as follows: "The information in this case charges the maintaining of a common nuisance. Under our

laws all places are common nuisances (1) where intoxicating liquors are sold, bartered, or given away in violation of law; or (2) where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage; or (3) where intoxicating liquors are kept for sale, barter, or delivery, in violation of the law.

"It is the maintaining of a place where these things, or one or more of them, are done, that constitutes the crime. The selling of intoxicating liquors contrary to law does not constitute the offense, nor does the keeping of intoxicating liquors for sale contrary to law constitute the offense. Neither is the offense committed by permitting persons to resort to the place for the purpose of drinking intoxicating liquors as a beverage. They are evidences of the offense. It is keeping the place where these things are done that constitutes the offense. Proof of keeping by the defendant, and that any of the prohibited acts was done by the defendant in such place during such keeping, would make the offense complete. So, if you find from the evidence beyond a reasonable doubt that the defendant kept the place as charged in the information, or at any time between the dates set out in the information, and that any of the prohibited acts mentioned above were done by him at such place during such time, you should find him guilty as charged in the information. Should you fail to find that the defendant kept the place during said time, or fail to find that any of the acts above set out were done as charged in the information, you should find the defendant not guilty.

"*In this connection, I charge you that it is a violation of law to sell or keep for sale intoxicating liquors as a beverage.*"

The defendant assigns error upon that portion of the instruction which is italicized. No exceptions were taken to the instructions, and under the rule announced by this court in State v. Reilly, 25 N. D. 339, 141 N. W. 720, no error can be assigned on the instructions, in absence of proper exceptions filed in the court below. As this point has not been raised by respondent's counsel, however, we shall not rest our decision upon this point, but will consider the reasons presented by appellant in support of his contention that the instruction is erroneous.

Appellant concedes that the instruction assailed is abstractly correct; but he says: "The effect of this charge was to tell the jury that they

might convict Scott of- a single sale of liquor, whereas the law is well settled that a single sale does not constitute keeping a nuisance." Appellant's entire argument is predicated upon the proposition just stated.

In our opinion appellant's argument is predicated upon an erroneous legal premise. Section 10117, Compiled Laws 1913, provides: "All places where intoxicating liquors are sold, bartered or given away, in violation of any of the provisions of this chapter, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of this chapter, are hereby declared to be common nuisances."

Under the express terms of this statute a place where intoxicating liquors are sold is a common nuisance, and the person who keeps and maintains such place keeps and maintains a common nuisance. It is not essential that the place shall be kept and maintained for any particular or designated length of time, or that any particular number of prohibited acts take place. A person who keeps and maintains a place where intoxicating liquors are sold, as a beverage, becomes guilty of keeping and maintaining such place· when the first sale is made, and the place thereby utilized for the prohibited purpose. The authorities seem to be in accord on the proposition that a single sale is evidence of keeping and maintaining a common nuisance within the purview of the statute. State v. Reyelts, 74 Iowa, 499, 38 N. W. 377; State v. Benson, 154 Iowa, 313, 134 N. W. 851; Bepley v. State, 4 Ind. 264, 58 Am. Dec. 628; Shideler v. Tribe of the Sioux, 158 Iowa, 417, 139 N. W. 900. See also Com. v. Kerrissey, 141 Mass. 110, 4 N. E. 820; State v. Cooster, 10 Iowa, 453, 457.

We have found no authorities to the contrary, and appellant's counsel have cited none in their brief.

It will be observed that the instruction assailed is merely one sentence of an instruction. No rule is better settled than that the. instructions must be construed as a whole. The first words of the sentence assailed refers to what had been said immediately before, and states that what follows must be considered, "in connection" with the language preceding.

We are agreed that no prejudicial error was committed by the use of the sentence assailed. This disposes of the only errors assigned on

this appeal. It follows from what has been said that the judgment of conviction must be affirmed. It is so ordered.

ROBINSON, J. (dissenting). In a crusade against wrong, good people have often done wrongs that would shame the Devil. A long-conducted and zealous crusade for a special object becomes a hobby which narrows the mind and dulls the mental and moral vision of the crusaders until they at length do evil that good may come. Such has been the grave fault for which the over-zealous Jesuits have been banished from many countries. Thus, in the crusade against liquor, charity and human kindness have been thrown to the wind and replaced by cruelty. The most drastic and cruel laws have been enacted; jury trials have been denied; personal liberty has been disregarded; witnesses, prosecuting attorneys, and even judges, have been bribed by love or fear or filthy lucre. Detective witnesses are employed and given pay in excess of regular witness fees, and are in the business for their dirty fee. In some cases prosecuting attorneys are allowed a bribe of $10 for each count on which a party may be convicted,—and the judges—they have reason to fear and tremble for their office if they fail to join the crusade and to manifest their zeal.

In this case the complaint is under a statute declaring all places to be a common nuisance where intoxicating liquors are sold or kept for sale or gift as a beverage, and where persons resort for the purpose of drinking intoxicating liquors as a beverage. The punishment of the first offense is a fine of not less than $200 nor more than $1,000, and by imprisonment of not less than ninety days nor more than one year; and, for the second and every successive offense, the punishment is imprisonment in the penitentiary not less than one nor more than two years.

This drastic statute is under this section of the Constitution: Section 217. No person . . . shall . . . manufacture for sale or gift, any intoxicating liquors, and no person . . . shall import any of the same for sale or gift, or keep or sell or offer the same for sale or gift . . . *as a beverage.*

The prohibition of the statute and the Constitution is only against a sale or gift as a beverage. In this case the complaint charges defendant with keeping and maintaining a common nuisance by keeping a

certain building in which intoxicating liquors were sold and bartered and given away as a beverage.

The case was tried before the county judge, and he granted a stay of proceedings pending the appeal.    In his order granting the stay he certified that in his opinion the substantial rights of the defendant as to the merits of the case had been violated.    Of course, that being true, it was the duty of the judge to suspend sentence or to order a new trial.

The evidence fails to show that any intoxicating liquors were sold or given away to-be drunk as a beverage.    The witnesses do not mention the word *beverage* or any similar word.    As the testimony shows, the defendant was a widower of sixty-three years.    He was a regular drayman.    He lived in a small house with three small children and a housekeeper.    The star witness had been rooming in the house of the defendant, and the housekeeper fired him because of his misconduct.    Then, instead of paying his room rent and wash bill, he went and made the complaint.    He testified that during three months he had roomed in the house of defendant and that about once a week he had bought and drank some beer.    The testimony does fairly show an occasional drinking of beer in the house of defendant, but there is nothing to show that the house was a resort for beer drinking, or that it was in any way a disorderly house or a common nuisance.    Defendant swore to his innocence.    Then he was arrested on a charge of perjury.    He again swore to his innocence and was again arrested.    Thus he was put out of business; his dray outfit was confiscated; his home was broken up; his children made wards of charity, and he himself confined and kept in idleness at the expense of the taxpayers.    Oh cruelty!    Thou art a wickedness.    One swallow does not make a summer; one love affair does not make a bawdyhouse.    The house must be kept as a resort for illegal and immoral purposes; the wrong must be common or it is not a common nuisance, and the legislature cannot make it otherwise.    It is perfectly absurd to say that the keeping of a house wherein one, two, or three drinks are sold or given away, is the keeping of a common nuisance.

In Cana of Galilee there was a wedding feast, and the mother of Jesus was there; and both Jesus and his disciples were called to the marriage; and when they wanted wine, the mother of Jesus said unto him, "They have no wine."    Jesus said unto the servants: "Fill the

waterpots with water. And they filled them up to the brim. Then he said unto them: "Draw out now, and bear unto the governor of the feast." And they bear it. When the ruler of the feast had tasted the water that was made wine, and knew not whence it was, the governor of the feast said to the bridegroom: "Every man at the beginning doth set forth good wine; and, when men have well drunk, then that which is worse; but thou hast kept the good wine until now." This beginning of miracles did Jesus in Cana of Galilee, and manifested forth his glory.

It cannot be truly said that any person at that feast was guilty of keeping or maintaining a common nuisance, or that in North Dakota the recurrence of such a marriage feast would constitute the keeping or maintaining of a common nuisance. In Scripture, drunkenness is everywhere denounced, but on occasions the drinking of wine and even strong drink is commended. Thus we did read: "Give strong drink unto him that is ready to perish, and wine unto those that be of heavy hearts. Let him drink, and forget his poverty, and remember his misery no more." "Go they way, eat they bread with joy, and drink thy wine with a merry heart; for God now accepteth thy works." He brought forth food out of the earth and wine that maketh glad the heart of man.

And the Apostle Paul writes to the Apostle Timothy: "Drink no longer water, but use a little wine for thy stomach's sake and thine often infirmities."

It is right to forbid the sale of drinks to Indians, minors, to some persons of Celtic blood, and to any person who does not know enough to care for himself and his family, but to forbid a taste of wine, beer, ale, or Dublin stout to an Anglo-Saxon or a Teuton, why that is cruelty. And cruelty, thou art a wickedness!

The majority opinion says it is virtually conceded that, if the testimony as stated be true, it is sufficient to establish the crime alleged. That is a grave mistake. There is no such foolish and false concession; and, if there were, it would in no way justify the court in sustaining the conviction. The testimony wholly fails to show that the defendant kept a disorderly house or a common nuisance, or a house in any way given to the sale or drinking of intoxicating liquors; or that he did an injury to any person. Under the rulings of the court, were Christ

to come to this state and to keep a house and to repeat the miracle of the marriage feast, he might be convicted and sentenced to the state's prison. That is neither law nor gospel.

It is a matter of regret that in some cases judges are too ready to give a narrow and cold-blooded construction to drastic statutes, and to impose on others burdens grievous to be borne, which they themselves touch not with one of their fingers.

At the Grand Pacific I have a nice, exclusive bachelor apartment ($45 a month). Now, if the governor, the bishop, or one of the justices call on me and I open a bottle of foamy Dublin Stout,—my elixir of life,—and for his stomach's sake or for good fellowship give him a glass and join him in a drink with a thousand earnest wishes for his health and happiness, does that make my nice exclusive apartment a common nuisance? If I call on the good bishop, and he treat me to a glass or a bottle of wine, does that turn his palace into a common nuisance? If not, then is there one law for the palace and another law for the cottage? In administering the law we should never forget that the primary purpose of law and government is to build up, and not to pull down; to assure the right of all to enjoy and defend life and liberty, to acquire, possess, and protect property, and to pursue and obtain safety and happiness.

The judgment should be reversed.