## STATE OF NORTH DAKOTA, Respondent, v. S. M. BURCHAM, Appellant.

### (176 N. W. 657.)

**Evidence — intoxicating liquors — question of maintaining "blind pig" was for jury.**

Where the defendant was convicted of maintaining a common nuisance by keeping and maintaining a so-termed "blind pig," and where, upon appeal, the defendant has challenged the sufficiency of the evidence to charge him with the keeping or maintaining of such "blind pig," it is *held* that there is some creditable evidence in the record concerning the keeping and maintaining of the "blind pig" by the defendant, and, though meager, this evidence was for the consideration of the jury as a matter of fact.

Opinion filed January 12, 1920.

Criminal action for maintaining a common nuisance in District Court, Richland County, *Allen,* J. From a judgment of conviction the defendant has appealed.

'Affirmed.

*C. J. Kachelhoffer* (*W. S. Lauder,* of counsel), for appellant.

*Jos. G. Forbes,* for respondent.

This court will not review sufficiency of evidence in the absence of a motion for a new trial. 17 C. J. 89; 12 Cyc. 813, 823.

Weight of evidence is for jury. State v. Reilly, 25 N. D. 339; State v. Gless, 29 N. D. 620; 12 Cyc. 731, 906, 907; Birmingham v. State (Wis.) 129 N. W. 670; Burnett v. State (Neb.) 130 N. W. 263; People v. Bowers (Cal.) 52 Pac. 553.

BRONSON, J. In the trial court the defendant was convicted of maintaining a common nuisance. He has appealed from the judgment therefor upon the sole ground that the evidence is insufficient to justify the verdict of guilty rendered.

The information charges the defendant and one McDonald with keeping and maintaining a place at Hankinson, between January 5, 1913, and June 1, 1914, where intoxicating liquors were kept for sale and sold, and where persons resorted for purposes of drinking the same as a beverage, contrary to the statute. The defendant alone was tried.

The evidence discloses that, during the time alleged in the information, the defendant conducted a restaurant with a pool room, called the "Gem Restaurant," in Hankinson. This place proper consisted of two rooms,—a large room used for a lunch counter and pool room; a smaller room used as a kitchen. Adjacent to these rooms, in the same building, there was another small room where there was maintained a "blind pig." There is no dispute in the record that in this room called a "blind pig," during the time alleged, beer was kept for sale, was sold, and was there drunk by purchasing customers, in abundance plenty. The question upon this appeal is, Who conducted, or was responsible for conducting, this "blind pig?" The defendant maintains that there is no evidence, as a matter of law, in the record, which formed any question of fact for the jury, that the defendant either conducted or was responsible for so conducting this place. The record has been examined at length.

The defendant asserts and testifies that McDonald was running the "blind pig," this same McDonald who later worked for him in the saloon business at Mishua, Minnesota. That although he had leased

this entire building, McDonald later got this room from him (just when he does not know), and ran this "blind pig" separate and apart from his rooms. In disposing of the beer in this room, the "modus operandi" was to lay down the money there, and soon, out through a "cuba hole," so-termed, the beer appeared, the dispenser unseen.

There is some evidence, however, that McDonald was working for the defendant; that he was cooking in the restaurant; that he worked upon or "fixed" the pool tables. The defendant received many shipments of liquor. One witness testified that he ordered beer from the defendant, while in this "blind pig" room, and McDonald got and was paid for the beer. This and other evidence, though meager, was sufficient, in our opinion, to take the case to the jury upon the questions of fact presented. See State v. Rozum, 8 N. D. 548, 558, 80 N. W. 477; State v. Kruse, 19 N. D. 203, 206, 124 N. W. 385; State v. Corn, 76 Kan. 416, 91 Pac. 1067; Scott v. State, 37 N. D. 90, L.R.A. 1917F, 1107, 163 N. W. 813; State v. Wheeler, 38 N. D. 456, 165 N. W. 574. Notoriously, "blind pigs" neither squeal aloud, nor see openly who their keepers are. The judgment is affirmed.

CHRISTIANSON, Ch. J., and GRACE, and BIRDZELL, JJ., concur.

ROBINSON, J. (dissenting). Colloquially, this is known as a "blind pig or common nuisance case." The complaint is that between January, 1913, and June, 1914, at Hankinson, in Richland county, the defendant did commit the crime of keeping a place for the sale of intoxicating liquors. A jury found Burcham guilty, and the judgment is that he be taken from the bosom of his family,—a wife and five young lasses,—and imprisoned in the county jail for three months, and that he pay a fine and costs amounting to $340. McDonald was clearly guilty. He had a government license to sell liquor, and there is documentary evidence showing that in each week he imported and received large shipments of beer. But McDonald escaped and went to Minnesota, and, as it appears, Burcham has been made the scapegoat to carry away into the wilderness and the county jail the sins of McDonald. In the opinion of one learned judge it is said: "The evidence against Burcham is quite meager." He says: "There is some evidence that

McDonald was working for defendant; that he was cooking in the restaurant and fixed pool tables of the defendant;" but that is all completely and fully disproven by the testimony of the defendant. And it seems that, without quoting or attempting. to weigh or give the gist of the testimony, the learned judge puts the responsibility on the jury. That is in accordance with past usage, but it is high time to forever discontinue it. The judges have always been too much disposed to shirk work and responsibility, and, like Pontius Pilate, to wash their hands and say: I am innocent; let others bear the responsibility—and that has been a standing reproach to the judges. In cases of this kind we all know of reasons why appellate judges should weigh and consider the evidence with scrupulous care; we know that judges and prosecuting attorneys have been elected to office because of their tact in catering to what is known as the dry vote, and because of their zeal in the prosecution of pigs. We know the prosecuting attorney has come before this court and asserted that he believed the defendant guilty. We have reason to believe that he, in like manner, gave the opinion to the jury, and he argued to the jury that counsel for defendant was in the habit of defending pigs—as if that were a disgrace to him and a reason for convicting the defendant. It should be known that a prosecuting attorney must conduct his case with fairness; that he must not appeal to passion or prejudice, nor put his opinion in the scale to weigh against the accused.

Now let us consider the testimony,—and there is really no testimony except that of the defendant. He appears to be an honest, well-to-do. and manly person. His testimony bears the impress of fairness and candor, and we say it is unimpeached and uncontradicted. He testifies: I have lived in Hankinson twelve years off and on. I am married, have five children. From January, 1913, to June, 1914, I conducted a place in Hankinson known as the Gem Restaurant and pool hall in the same building. The building was 40 feet wide and 60 feet deep. I had 40 feet of it (the 40 front feet). In the north end of the building there were two rooms, which were occupied by McDonald. I did not hire these two rooms; I never paid rent for them. I had nothing to do with ordering the beer shipped to McDonald. I never at any time requested or authorized him to ship beer to that place. I never

hired or requested any drayman to haul beer to that place or to haul away empties. I never paid for a single bottle, cask, keg, box, or anything else of the beer represented by the stack of papers (the exhibits of shipments to McDonald). Neither did I pay freight on any of them. My wife and my family drink beer, whisky, and occasionally wine. I bought liquor and had the same at my house for private use of myself and family. None of it went to the restaurant, and none of it was sold there.

I carried on a pool room and restaurant. Archie McDonald did not work for me in the pool hall and was not in my employ. I did not work for Archie McDonald. I did not sell one drop of intoxicating liquor of any kind to any person, either in the Gem Restaurant or in the room back of it or in any other place. McDonald boarded in the pool room. I never employed him to fix pool tables. I had a man working for me. He never did any cooking in the restaurant, though sometimes he cooked his own meals. He was a regular boarder there. I never sold a drop of liquor that was shipped to me.

In Nashua, commencing November, 1915, I ran a saloon in connection with a wholesale liquor house. I discontinued the business when they voted to close the saloons. I came back to Hankinson in 1916. At Nashua I had three others in my employ besides McDonald. (64) Such is the gist of the testimony of defendant—and I submit that it is wholly uncontradicted, either by facts or circumstances. There is no evidence to sustain the charge against the defendant, and on this old matter of nearly six years, there is no reason for subjecting the defendant and the county to the expense, vexation, and annoyance of a new trial.

Judgment should be reversed and action dismissed.