CARSON STATE BANK, a Corporation, Respondent, v. GRANT
    GRAIN COMPANY, a Corporation, et al., Equity Co-operative
    Exchange, a Corporation, Appellant.

(197 N. W. 146.)

**Appeal and error — appeal must be taken within six months from notice of
entry of judgment.**

1. Under § 7820, Comp. Laws, 1913, to be effective, an appeal from a judg-
ment must be taken within six months from date of notice of entry thereof.

**Appeal and error — failure to renew motion to direct verdict at close of
whole case held waiver of error in denying motion.**

2. Error may not be predicated upon an adverse ruling on a motion for
directed verdict made at the close of the plaintiff's case where the defendant
thereafter introduces evidence, and fails at the close of the whole case to
renew the motion for directed verdict.

**Judgment — motion for directed verdict at close of whole case prerequisite
to subsequent motion for judgment notwithstanding.**

3. Under chapter 133, Laws 1921, a motion for a directed verdict at the
close of the whole case is a prerequisite to a subsequent motion for judgment
notwithstanding the verdict.

**Warehouseman — manner in which interest of holder of storage ticket for
grain deposited with warehouseman attaches stated.**

4. The interest of the holder of a storage ticket for grain deposited with a
warehouseman attaches proportionately, to the extent that is required to
redeem all outstanding storage tickets, to all the grain of kind and quality
described in his receipt that may at any time  subsequent to its issuance be
received on account of purchase or general storage into the warehouse, and
this is so even though at some intervening moment there may be no grain
whatsoever therein.

**Warehouseman — demand holder of storage ticket for grain sufficient when
refused to warrant action for conversion.**

5. A demand made by the holder of a storage receipt for the grain repre-
sented thereby is sufficient, when refused, to warrant an action in conversion,
even though not accompanied by an offer to pay storage and other charges
accrued, where the refusal is on the ground that there is in no event any
liability on account of the grain demanded.

---

Note.—(1) Time within which appeal from judgment must be taken, see 2 R.
C. L. 107.

(2) Ruling on motion for directed verdict, see 26 R. C. L. 1083; 3 R. C. L.
Supp. 1492.

**Warehouseman — evidence held to sustain judgment for plaintiff in action for conversion of grain.**

6. Record examined and *held* that the evidence is sufficient to sustain the verdict.

Opinion filed January 23, 1924.

Appeal and Error, 3 C. J. § 1061 p. 1060 n. 58. Judgments, 33 C. J. § 114 p. 1186 n. 59. Trial, 38 Cyc. pp. 1590 n. 49; 1591 n. 50. Warehousemen, 40 Cyc. pp. 406 n. 67, 71; 407 n. 70; 414 n. 21, 24; 442 n. 58, 449 n. 14; 478 n. 32.

Appeal from the District Court of Grant County, *Lembke, J.*

Action in conversion. Judgment for the plaintiff. The defendant, Equity Co-operative Exchange, appeals.

Affirmed.

*Sinness, Duffy & Wheeler,* and *Drake, Solether, Day & Evans,* for appellant.

Where parties consent to try their cause below upon a particular theory of what the law of the case is, they cannot complain on appeal if the result is correct according to that theory, however incorrect the theory may be. White v. Western Assur. Co. 52 Minn. 352, 54 N. W. 195; Davis v. Jacoby, 54 Minn. 144, 55 N. W. 908; Engler v. Schneider, 66 Minn. 388, 69 N. W. 139; Burgraf v. Byrnes, 104 Minn. 343, 116 N. W. 838.

A demand followed by a refusal, would constitute a conversion. First Nat. Bank v. Minneapolis & N. Elev. Co. 91 N. W. 439.

We think this position is unsound, particularly in view of the well-known custom among warehousemen in this state to ship out grain that is received into the warehouse almost as soon as received, in order to make room for other grain that is constantly coming in. Marshall v. Andrews, 79 N. W. 852.

No duty to deliver the grain or pay its value is involved under this statute until there is a demand. Nicholson v. Poehler Co. 284 Fed. 992.

Only upon a demand by the person entitled to possession, and a refusal on its part, would it (the warehouseman) be liable for a conversion. First Nat. Bank v. Minneapolis & N. Elev. Co. supra; Town v. St. Anthony & D. Elevator Co. 6 N. D. 200; Sandford v. Dul. & Dak. Elev. Co. 2 N. D. 6; N. D. Laws 1917, § 8, chap. 250.

Within these rules, the court is of the opinion (there being nothing in the record to show a wilful or wrongful conversion on the part of defendants, nor any evidence showing gross neglect on their part to ascertain the rights of plaintiff) that plaintiff should recover the value of the property at the time of the demand for its return, less the storage charges and the expense of transporting it from the warehouses to Minneapolis, where it was sold. We adopt the time of the demand because the property was rightfully detained from plaintiff until that date, and it cannot be said to have been actually converted by defendants until the demand was made. Robbins v. Daliff (Minn.) 76 N. W. 772.

Where grain is deposited in an elevator or warehouse on an understanding express or implied, that the warehouseman may mix it with other grain of like quality and shall return to the depositor the amount of his deposit out of the mass which is to be kept good to that extent, the various owners of the grain are tenants in common and the transaction is a bailment. 6 C. J. 1097.

Where several parties stored wheat in a warehouse, and the wheat was not kept separate, a deficiency or loss, not occasioned by the fault of any of them, must fall upon all, in proportion to which the amount of wheat of each bore to the whole amount deposited; and where the holder of a receipt has received more than his ratable share after the loss, he will be found, in view of the deficiency, to account for such excess, according to his proportion of the loss. Goodman v. Northcutt, 14 Or. 529, 13 Pac. 485.

*Jacobsen & Murray,* for respondent.

The holders of warehouse receipts are owners in common of the grain in the warehouse up to the quantity required to redeem the receipts. Kastner v. Andrews, 194 N. W. 824.

When a warehouseman ships grain out and substitutes for it other grain which he has purchased, the grain he places in the common mass passes to the holders of the receipts to the extent required for redemption. The holders of the receipts, then, must remain the owners until their title is lawfully divested. The right of the warehouseman to sell as his own being necessarily limited to the quantity over that which is required to redeem outstanding receipts. Ibid.

NUESSLE, J. This action was brought to recover on account of the

conversion of certain grain. The complaint alleges that the defendant Grant Grain Company was engaged in business as public warehouseman, and as such bought and received for storage, wheat and other small grains and shipped and sold the same to and in the terminal markets at St. Paul, Minneapolis and Duluth; that the Equity Co-operative Company was engaged in the business of buying and selling grain in such markets; that the defendant Grant Grain Company as such public warehouseman during the fall of 1920 received in storage from certain farmers in and about the village of Carson, North Dakota, certain wheat and rye, and issued storage receipts therefor whereby the said Grant Grain Company contracted to deliver to such depositors or their assignees upon demand the same amount of grain of the same quality and grade as received in store; that such depositors to whom receipts were issued have assigned the same to the plaintiff, and that the said plaintiff is the owner and holder of such receipts and the owner of the grain represented by them; that the said Grant Grain Company, without the knowledge or consent of the depositors of said grain and the holders of said storage tickets, shipped and sold the grain to the defendant, Equity Co-operative Exchange, and others, and failed to keep any grain in storage anywhere with which to redeem and make redelivery of the grain represented by such storage tickets; that the said Equity Co-operative Exchange converted all of the said grain to its own use; that prior to the commencement of the action plaintiff made demand upon the defendants and each of them for the redelivery of so much of said grain as might be necessary to redeem the said storage tickets or for the payment of the value thereof, which demand was refused; that such grain was of the reasonable value of $8,000, and demands judgment therefor with interest from the date of the conversion.

The defendant Equity Co-operative Exchange answered to this complaint, alleging that it is a corporation engaged in the business of purchasing and selling grain on commission at St. Paul, Minneapolis and other places, and denies all of the other matters and things set out and alleged in plaintiff's complaint. It further alleges that if any stored grain belonging to the plaintiff or plaintiff's assignors came into its possession that the same was shipped to it by the Grant Grain Company in the usual course of business and with the knowledge, consent, acquiescence and authorization of the plaintiff and its assignors; that

the Grant Grain Company, as a public warehouseman under the laws of the state of North Dakota, made and filed with the officers of the state of North Dakota as required by law a bond as a licensed warehouseman in the sum of $5,000; that the plaintiff has failed, neglected and refused to enforce the obligations of such bond and to make any demand upon the sureties therein for the delivery of said grain or for payment therefor; that the plaintiff does not represent and is not the assignee of all persons to whom storage tickets were issued by said Grant Grain Company during the time set out in the complaint, and that there are many other persons holding outstanding storage tickets issued during said time by the Grant Grain Company; that the Grant Grain Company is solvent and possessed of means to discharge and fulfill all obligations and make all payments necessary for the discharge of its obligations as a public warehouseman to the plaintiff and the plaintiff's assignors; that while the storage tickets involved in the action were outstanding, the Grant Grain Company sold the grain represented thereby and deposited the proceeds of such sale in the plaintiff bank for the benefit of the storage ticket holders and informed the plaintiff of such fact; that the plaintiff wilfully and against the will and without the consent of the Grant Grain Company appropriated such funds in the sum of $3,000 to its own use by charging against such deposits certain obligations owed to it by the Grant Grain Company; that such money so appropriated should be credited upon the storage tickets involved in the action.

No service was made on certain of the named defendants, and the case was dismissed as to all of the others excepting the Equity Co-operative Exchange.

The case was tried to a jury. At the conclusion of the plaintiff's case the defendant moved for a directed verdict. This was denied. The defendant then offered evidence in support of its answer but failed to renew its motion for a directed verdict at the close of the whole case. A verdict was returned in favor of the plaintiff for the sum of $2,473.-73, and judgment was entered thereon on the 19th day of December, 1922. Thereafter the defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. Such motion was denied. On the 17th of July, 1923, the defendant perfected this appeal from the order denying such motion and from the judgment.

The record establishes that the plaintiff was a North Dakota banking corporation doing business at the village of Carson. The Grant Grain Company had an elevator at Carson, and during the grain season of 1920 received and issued storage tickets for grain. Certain of these storage tickets were in May, 1921 assigned to the plaintiff. These particular tickets were issued between September 17th, 1920 and November 30th, 1920—most of them prior to October 6th. It appears that the Grain Company from time to time shipped out the grain received by it. Such shipments were made to various commission houses at the terminal markets. The tickets held by the plaintiff called for wheat and rye. The first shipment consigned to the defendant Equity Co-operative Exchange was made on December 7th, 1920. Thereafter and between that date and February 25th following, seven cars of wheat and one bulkhead car loaded with rye and flax were consigned to it. On October 6th, 1920, there was in the grain company's elevator at Carson only 495 bushels 45 pounds of wheat, although plaintiff's storage tickets for 2,661 bushels were then outstanding. Thereafter and between that date and December 7th several cars of wheat were shipped out consigned to others than the defendant company. On December 2nd all the rye in the elevator was shipped to the Atwood Larson Company at Duluth. So that in fact on December 7th no rye was in the grain company's elevator and probably none of the wheat actually deposited by the plaintiff's assignors, and therefore, it is plain that such rye as was shipped to the defendant and probably such wheat as was shipped to the defendant was never at any time physically a part of the common mass contributed to by the assignors of the storage tickets to the plaintiff.

The defendant company was engaged in the selling of grain at the terminal markets on commission. Such grain as it sold on account of shipments from the Grant Grain Company it accounted for, deducting only the customary commission for its services in the making of such sales. The proceeds of such sales were remitted to the Grant Grain Company and deposited in the plaintiff bank which had knowledge that such deposits were the proceeds of sales of grain shipped by the grain company. The defendant Exchange had no actual notice that the grain sold by it was stored grain. But it knew that the Grant Grain Company was in the grain warehouse business.

The Grant Grain Company owed the plaintiff bank $3,000 on cer-

tain notes. These notes fell due in December, 1920 and were paid by the bank charging the grain company's account, replenished by the proceeds of the sale of stored grain, with the amount of the notes and interest and placing a slip showing the transaction among the cancelled and paid checks returned to the grain company. There is a dispute in the testimony as to whether this was done with the consent of the officers of the grain company. The witness Hag testifies that it was over their protest and without their consent. The plaintiff's witness Hart testifies that it was by an agreed arrangement. In any event, this transaction took place some time prior to the time when the plaintiff became the assignee of the storage tickets sued upon.

All the grain was shipped out of the grain company's elevator by some time in February, 1921. No demand is shown to have been made upon the grain company for the grain represented by the tickets sued upon, but it appears from the testimony of the company's manager that these tickets were presented for payment, and payment refused for the reason that the company had no funds wherewith to pay. It further appears by stipulation that at the time of the action the company had no property other than its elevators at Carson and Odessa and which were subject to a mortgage of $6,000, and also the lien of certain attachments prior to the claim of the plaintiff, and the sum of $1,000.00 on deposit in the plaintiff bank as rental for the two elevators in question, and which was there on deposit subject to the claim of the mortgagees of the elevators and attaching creditors. The jury found that the failure to redeem such tickets was the result of and caused by the insolvency of the Grant Grain Company.

It appears further that the Grant Grain Company had storage tickets outstanding and unredeemed in addition to those sued upon by the plaintiff. It appears by stipulation that the value at Carson, North Dakota of the grain represented by the storage tickets sued upon, was $2,885.95, and that payments or redemptions had been made on account of such tickets in the amount of $345.85. No demand was made upon the defendant Exchange for the grain represented by these tickets excepting that a letter was written by the plaintiff's attorney to the defendant demanding the grain represented by such tickets. It further appears that in answer thereto the defendant refused to account for the grain, and denied liability for the reason as stated by it that "in hand-

ling whatever consignments were made to us by the Grant Grain Company we simply acted as their commission agents in the matter and we do not recognize any liability such as inferred by your letter."

The judgment attempted to be appealed from was entered on December 19th, 1922 and notice of entry thereof served upon the defendant. The appeal was not taken until July 17th, 1923. The respondent contends that the appeal from the judgment was not timely and must be dismissed. We think that the respondent's position is well taken. The statute, § 7820, Comp. Laws 1913, is plain. See also National Union F. Ins. Co. v. Martin, 41 N. D. 393, 170 N. W. 880. The respondent also urges that while there was a motion for a directed verdict at the close of the plaintiff's case that on its denial the defendant introduced its evidence, and at the close of the whole case failed to renew its motion for a directed verdict. And that thereby the error in that respect, if any, was waived. The respondent is right in this. See Buchanan v. Occident Elevator Co. 33 N. D. 346, 157 N. W. 122; Halverson v. Lasell, 33 N. D. 613, 157 N. W. 682; Scott v. State, 37 N. D. 90, L.R.A.1917F, 1107, 163 N. W. 813; Leonard v. Raleigh Co-op. Mercantile Co. ante, 400, 196 N. W. 102. Likewise, there was no error in denying the motion for judgment notwithstanding the verdict, since no motion for directed verdict was made at the close of the case. See chap. 133, Laws 1921. See also Johns v. Ruff, 12 N. D. 74, 95 N. W. 440; Anderson v. Phillips, 40 N. D. 586, 169 N. W. 315. That being the case, there remain for consideration only the questions arising by reason of the ruling of the trial court in denying the appellant's motion for a new trial.

The grounds of the defendant's motion for a new trial were, first, excessive damages given under the influence of passion and prejudice, second, the insufficiency of the evidence to justify the verdict, third, that the verdict was contrary to the law, and fourth, certain errors of law occurring at the trial. The defendant specified that the evidence was insufficient to justify the verdict by reason of its failing to establish; that the plaintiffs were the owners of any grain received by the defendant from the Grant Grain Company; that the defendant converted any grain belonging to the plaintiff or its assignors; and that if there was any conversion, the evidence fails to sustain a verdict in any sum in excess of $1,500. The errors of law complained of are

based upon the denial of the motion for directed verdict made at the close of plaintiff's case and the refusal of the trial court to give certain instructions, twelve in number, as requested by the defendant. No exceptions were taken to the instructions as given.

Appellant contends that the verdict was excessive. This contention is based upon the premise that though the holder of a storage ticket issued in compliance with §§ 3113 et seq., Comp. Laws 1913, and the Uniform Warehouse Receipts Act (Laws 1917, chap. 250), is an owner in common in and entitled to demand grain from the common mass to the extent of his contribution thereto, that the common mass from which he may thus claim is measured at all times by the least number of bushels therein of which his contribution may be a physical part. For example, if the mass to which he contributed 10,000 bushels be depleted by shipment and sale to 1,000 bushels and thereafter replenished to 100,000 bushels by subsequent accretions by purchase or otherwise from others, the minimum of 1,000 bushels measures the extent of his interest in common in the new mass. And further, that if the whole of the physical mass to which he contributed be disposed of by the warehouseman he has no interest or ownership in any grain that may thereafter be placed in the warehouse by the warehouseman, whether procured by purchase or otherwise. If the defendant be right in its contention in these respects, the verdict is excessive. This court has lately passed upon the question of the respective rights and obligations of grain warehousemen and depositors of grain therewith on account of storage in the case of Kastner v. Andrews, 49 N. D. 1059, 194 N. W. 824. Judge Birdzell, writing the opinion in that case, after a consideration of the decisions of the court touching this question, said: "We regard these propositions as established: The holders of warehouse receipts are owners in common of the grain in the warehouse up to the quantity required to redeem the receipts. There is nothing in our statutes which can reasonably be construed as a recognition of an actual authority in the warehouseman to sell stored grain required for the redemption of outstanding receipts. This court has never construed our statutes as conveying any such authority, and the decisions relied upon by the appellant merely recognize the legal fiction of separation and substitution in the case of fungible goods. They involve no question concerning a limitation upon the bailee's right to sell from the

common mass. When the warehouseman ships grain out and substitutes for it other grain which he has purchased, the grain he places in the common mass passes to the holders of the receipts to the extent required for redemption. The holders of the receipts then must remain the owners until their title is lawfully divested. The right of the warehouseman to sell as his own being necessarily limited to the quantity over that which is required to redeem outstanding receipts, it follows that where stored grain is shipped out and sold to the point where the warehouseman cannot redeem the outstanding receipts, property is sold which the vendor does not own." Thus it is plain that the holders of warehouse receipts are owners in common of the grain in the warehouse up to the quantity required to redeem such receipts, and the warehouseman may ship out and sell any quantity from the common mass in excess of that required to redeem outstanding receipts; but if he ships and sells any of the mass above such excess he and the buyer thereof are guilty of conversion to that extent. It is plain that the ticket holder has no claim or right to the identical grain stored by him. It is likewise plain that the warehouseman may commingle grain purchased and owned by him with that held in storage. He may substitute that which he buys of a like kind and quality, and while he has no right to first sell and then substitute, yet under his contract with his bailor where he does sell before he substitutes, the law substitutes that which he thereafter buys. The interest of each ticket holder attaches proportionately to the extent that is required to redeem all outstanding storage tickets to all the grain of kind and quality described in his receipt that may at any time subsequent to its issuance be received on account of purchase or general storage into the warehouse, and this, even though at some intervening moment there may be no grain whatsoever therein. Thus it necessarily follows that whenever, subsequent to the issuance of a storage ticket to a bailor of grain, the warehouseman sells from the mass in which such bailor has an interest in common, such an amount as to reduce the mass to less than that required to redeem the storage tickets outstanding at the time of such sale, there is a conversion. And there may be as many conversions as there are sales of grain that deplete the common mass, original or replenished, below the quantity required to redeem storage tickets then outstanding. We must, therefore, hold that the verdict was not excessive.

What we have just said in the preceding paragraphs is likewise applicable to the contentions as made by the appellant that the evidence is insufficient to justify the verdict, and that the verdict is contrary to law. The appellant argues that it appears from the evidence that there were other storage tickets outstanding in addition to those upon which the plaintiff claims to recover; that such ticket holders were not joined in the present action; and that if the plaintiff be permitted now to recover, that such other ticket holders may later assert their claims against the defendant and have a recovery. We think that on the record as made it appears that while there were other holders of outstanding storage tickets that nevertheless the whole amount of grain represented by all of the outstanding storage tickets, including those the subject of this action, did not exceed the whole amount of grain sold by and through the appellant; and that being the case, the appellant is not now in a position to complain. Furthermore, the appellant did not seasonably raise any objection on account of the fact that all the holders of outstanding storage tickets were not joined as parties plaintiff, nor did it ask that such other holders of outstanding storage tickets be interpleaded in the action to the end that their and its rights might be protected.

Appellant predicates error on account of the refusal of the trial court to instruct the jury as requested by it in various particulars, and specifies twelve requests thus refused by the trial court. After a careful consideration of these various specifications, we are convinced that there was no error by reason of the action of the trial court with reference to the matter of instructions. The requests specified at Nos. 2, 3, 5, 6, 7-a and 8 were in substance given. It is true that they were not given in every case in the identical words as requested, but they were given in substance and that is sufficient. Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711; Fawcett v. Ryder, 23 N. D. 20, 135 N. W. 800, 3 N. C. C. A. 153; State v. Ramsey, 31 N. D. 626, 154 N. W. 731; State v. Carter, ante 270, 195 N. W. 567; Waterhouse v. Jos. Schlitz Brewing Co. 16 S. D. 592, 94 N. W. 587; State v. Jackson, 21 S. D. 494, 113 N. W. 880, 16 Ann. Cas. 87; Miles v. Penn Mut. L. Ins. Co. 23 S. D. 400, 122 N. W. 249.

The request referred to in Specification No. 3 was properly refused. There was a sufficient demand made upon the defendant for the grain

called for by the plaintiff's storage receipts. It is true that the plaintiff did not offer to pay storage and other charges accrued to date of the demand, but that was not the reason assigned by the defendant when such demand was refused. The reason for such refusal was that the defendant contended that it had acted only as agent in any sales made and had not converted the grain, and plainly any offer to pay storage and other charges would have made no difference in its attitude. See Rolette State Bank v. Minnekota Elevator Co. ante, 141, 195 N. W. 6 and cases cited; Jackson v. Sevatson, 79 Minn. 275, 82 N. W. 634.

Neither was there error by reason of the refusal of the court to give the instructions referred to in Specifications 4, 7–b, 7–c, 7–d and 7–c. These requests were contrary to the law as established by the Kastner Case, 49 N. D. 1059, 194 N. W. 824, and what we have heretofore held in this opinion with reference to the rights of the holders of storage tickets.

The judgment and order appealed from must be affirmed. It is so ordered.

BRONSON, Ch. J., and CHRISTIANSON, JOHNSON, and BIRDZELL, JJ., concur.