[File No. 6774]

P. L. KEATING, Respondent, v. F. H. PEAVEY & COMPANY, a
Corporation, Appellant, and THE STATE OF NORTH DAKO-
TA EX REL. THE BOARD OF RAILROAD COMMISSION-
ERS OF THE STATE OF NORTH DAKOTA, Intervener and
Respondent.

(3 NW(2d) 104)

Opinion filed March 14, 1942

*W. H. Stutsman* and *A. C. Remele,* for appellant.

*J. M. Hanley,* for respondent.

*James M. Hanley, Jr.,* for intervener and respondent.

BURKE, J. In this case defendant has appealed from an order of the
district court of Burleigh county sustaining a demurrer to its answer.
In his complaint, plaintiff alleged that the defendant had converted
606 bushels and 10 pounds of wheat which he had stored in defendant's
warehouse. He demanded judgment for a sum equal to the highest
market value of such wheat between the time of his demand for the de-

livery thereof and the date of trial. In its answer the defendant alleged that it was engaged in business as a public warehouseman at Wahpeton, N. D., where it operated two public warehouses under one license of the Public Service Commission; that on the 3d day of August, 1939, the plaintiff delivered 606 bushels and 10 pounds of No. 3 dark northern wheat, to one of its said warehouses and defendant issued to plaintiff its warehouse receipt therefor; that on the 4th day of August, 1939, said warehouse was destroyed by fire and the entire contents thereof including plaintiff's wheat were likewise destroyed; that defendant offered to pay to plaintiff the sum of $339.46, the value of his wheat at the time of its destruction; that defendant continued to operate as a warehouseman at Wahpeton immediately subsequent to said fire, proceeded to repair said destroyed warehouse and shortly thereafter continued in business at both warehouses; that defendant has at all times been and still is able and willing to pay to the plaintiff the value of his wheat at the time of its destruction.

The sole question presented is whether or not a bailment of grain to a public warehouseman is terminated by the destruction of the grain where the warehouseman continued in business as such thereafter. Plaintiff concedes that as a general rule, the destruction of the subject matter of a bailment terminates the bailment and that the bailee cannot convert the destroyed property because it is no longer in existence or subject to conversion. Marshall v. Andrews, 8 ND 364, 79 NW 851. He contends, however, that a different rule applies with respect to the bailment of grain to a public warehouseman, so long as the warehouseman continues in business. He rests his contention on § 34, chapter 155, ND Laws 1927, and upon the decisions of this court in Carson State Bank v. Grant Grain Co. 50 ND 558, 197 NW 146, and Kastner v. Andrews, 49 ND 1059, 194 NW 824. Section 34, supra, provides: "Where a public warehouseman ceases business through destruction of warehouse by fire or other causes, or through insolvency, such warehouseman shall redeem all outstanding storage receipts at the price prevailing on the date the warehouse was destroyed, or closed because of insolvency, and the holder of such receipts upon due notice must accept this price and surrender the receipts."

Plaintiff says, that since the foregoing statute permits a warehouse-

man who ceases business because of the destruction of his warehouse by fire, to settle with owners of destroyed grain upon the basis of its value at the time of its destruction, it follows that he is to be denied that privilege if, as in this case, he continues in business at another warehouse and immediately rebuilds the destroyed warehouse and re-engages in business therein. He asserts that such a construction necessarily follows from the relationship which comes into being between a bailor and bailee upon a bailment of grain. He points out the language of this court in Carson State Bank v. Grant Grain Co. 50 ND 558, 197 NW 146, supra, wherein we said: "It is plain that the ticket holder has no claim or right to the identical grain stored by him. It is plain likewise that the warehouseman may commingle grain purchased and owned by him with that held in storage. He may substitute that which he buys of a like kind and quality, and while he has no right to first sell and then substitute, yet under his contract with his bailor where he does sell before he substitutes, the law substitutes that which he thereafter buys. The interest of each ticket holder attaches proportionately to the extent that is required to redeem all outstanding storage tickets to all the grain of kind and quality described in his receipt that may at any time subsequent to its issuance be received on account of purchase or general storage into the warehouse, and this even though at some intervening moment there may be no grain whatsoever therein." He contends that the rule applicable where all of the grain in a warehouse has been sold and moved should also apply where all of the grain has been destroyed by fire provided the bailee continues in business as a warehouseman and the interest of the holders of tickets for the destroyed grain "should attach proportionately to grain of like kind and quality which is thereafter received" into the rebuilt warehouse.

Our decisions in Kastner v. Andrews and Carson State Bank v. Grain Co. both rested upon our conclusion that our statutes recognized "the usual and necessary custom of shipping grain out of warehouses" [49 ND 1059, 194 NW 826] and provided that a sale of grain bailed to a public warehouseman should not terminate the bailment. It does not follow from the fact that a bailment of grain continues after a sale of the grain that it also continues after destruction of the grain by fire. Considerations of custom and necessity of the business which gave rise to the legal fiction in the case of a sale do not exist in case of destruction

by fire. We therefore find no support in these decisions for the construction which plaintiff contends should be given to § 34, supra. Standing alone this statute merely fixes the liability of a warehouseman who ceases business because of the destruction of his warehouse from any cause or because of insolvency. Plaintiff's contention that, by negative import, the statute upsets well established rules of law and imposes a different measure of liability for destroyed grain upon a warehouseman who continues in business is not sound. Further, it is contrary to the clear implication of § 29 of the same chapter, Laws 1927 chap. 155, which provides: "All grain, whether on storage ticket or deposit with the warehouseman, shall be kept insured at the expense of such warehouseman for the benefit of the owner, provided, that no insurance policy covering grain in a public warehouse shall be transferred or assigned, except in so far as the same shall cover grain not stored, to any person for any purpose whatever, and the owners of storage tickets issued by any public warehouse shall have a first lien, to the extent of the value of the grain at the time of destruction at the place where stored, on all such insurance for any loss or injury sustained by them on account of the destruction or injury of such grain by fire or tornado or any other cause covered by such insurance policy."

In this section the legislature has made provision to protect a bailor of stored grain against loss arising from the destruction of the grain. It has protected him to the extent of the value of the grain at the time of its destruction. It is hardly conceivable that the legislature would take steps to protect a bailor against loss and at the same time provide that the extent of his protection should differ from the measure of his loss. We think that § 29, supra, is a clear legislative recognition of the general rule that a bailment of stored grain in a public warehouse is terminated by the destruction of the grain. Defendant's answer, therefore, states a defense to plaintiff's allegations of conversion and the order of the District Court sustaining the demurrer to the answer must be and is reversed.

BURR, Ch. J., and MORRIS, CHRISTIANSON, and NUESSLE, JJ., concur.