STATE v. NORTHWESTERN ELEVATOR COMPANY.[1]

May 31, 1907.

Nos. 15,261—(18).

**Taxation—Wheat Stored in Elevator.**

> The defendant owns a grain elevator at Minnesota Transfer, in which there were thirty thousand bushels of wheat on May 1, 1905, and this is a proceeding to collect from the defendant a personal property tax for that year, based on its alleged ownership of the wheat. The defense was that the defendant did not own the wheat, but was holding it in store for the owners thereof, to whom the defendant theretofore had issued its warehouse receipts, which were then outstanding. *Held*, that the evidence was not sufficient to sustain a finding and decision that the defendant either owned the wheat, or so treated it that it is estopped, for the purpose of taxation, from denying that it owned it.

Proceeding in the district court for Ramsey county to recover $582.-76 for personal property taxes delinquent for the year 1905. The case was tried before Kelly, J., who found in favor of plaintiff for the sum demanded. From a judgment entered pursuant to the findings, defendant appealed. Modified.

*Daniel W. Doty*, for appellant.

*Richard D. O'Brien* and *Patrick J. Ryan*, for the State.

START, C. J.

This is a proceeding to enforce the collection of personal taxes for the year 1905 against the defendant. A citation was issued by the district court of the county of Ramsey, requiring the defendant to show cause why judgment should not be entered against it for $528.76, for taxes assessed against it on personal property for the year 1905. The defendant answered, and alleged that on May 1, 1905, it had in the county of Ramsey office furniture of the value of $250 and no other personal property therein. It admitted that it owned a grain elevator at Minnesota Transfer, and that on May 1, 1905, there was in store in the elevator 29,190 bushels of wheat, for which the owners held its warehouse receipts. The trial court found that the defendant had

[1] Reported in 112 N. W. 68.

treated the wheat stored in its elevator as its own, and that it should not be heard to deny such ownership for the purpose of avoiding the payment of taxes on the wheat, and ordered judgment for the state for the full amount claimed, and it was so entered. The defendant appealed from the judgment.

The record presents the question whether the defendant owned the wheat, or is estopped, for the purposes of taxation, to deny that it owned the wheat, in its elevator on May 1, 1905. The undisputed evidence shows the following facts: The defendant in 1905 was engaged in buying and selling wheat, and also in storing wheat for other owners. Its principal office was in Minneapolis, and it owned a line of country elevators; also an elevator in the county of Ramsey at the Minnesota Transfer. Its own grain and that received for storage of the same kind and grade were commingled in its elevators. It issued receipts for wheat received for storage, which were in form and substance as prescribed by the railroad and warehouse commission. Each receipt stated the grade and quantity of the wheat stored, the charge for receiving, storing, and insuring it, and provided that upon the return of the receipt and payment of the stipulated charges the amount, kind, and grade of wheat therein stated would be delivered to the person named therein, or to his order, from the elevator at which the receipt was issued, or, at the option of the owner, in quantities not less than a car load on track on the same line of railway at any terminal point within this state. As a rule, however, the defendant purchased the wheat owned by the ticket holders whenever they presented them at the elevators, and upon such purchase the receipts were surrendered and canceled, or, in other words, they were redeemed in money. It was only in exceptional cases that there was an actual delivery of the wheat on the return of the receipts. The defendant, whenever it sold any wheat, was accustomed to make delivery thereof out of the common mass of grain in its elevators. On May 1, 1905, there was in the defendant's elevator in the county of Ramsey 29,190 bushels of wheat, in its country elevators 38,970 bushels, and in transit 13,000 bushels, making a total of 81,160 bushels of wheat in its possession or control on that day; but there were then outstanding receipts issued by it for wheat received in store which in the aggregate called for 88,310 bushels— that is, it had sold seven thousand one hundred fifty bushels of wheat

101 M.—13

for which it had issued grain receipts which were then outstanding. This seeming felony was explained by the defendant's president substantially as follows:

> This slight discrepancy between the wheat checks and the wheat on hand is not intentional. It cannot be helped in the large volume of business done by this company. The rule is always to keep some wheat on hand which is owned by the company in excess of the tickets outstanding, and such was the situation May 1, 1904, and May 1, 1906, and the same was listed with the assessor of Ramsey county. It seldom happens that the wheat on hand is less than the checks, which appears to have been the case May 1, 1905.

He also testified as follows:

> Q. What did you sell that wheat for that belonged to the farmer? A. Well, it is one of these contingencies, in a large business, where you sometimes get a few thousand bushels away one way or the other. You sell a few thousand bushels more than you have got, or you sell a few thousand bushels less. Q. By what authority did you sell wheat belonging to the farmers in the western counties of the state? A. I suppose on the theory that, if they should demand the wheat and we didn't have it to deliver, that we could buy it and give it to them. * * * Q. As soon as you discover that you have let the farmers' wheat get away, then you don't sell any more until it is replaced by actual wheat that comes in? A. As a rule we don't.

It is clear upon this state of facts that the defendant on May 1, 1905, did not own any of the wheat in its elevator in the county of Ramsey. On the contrary, every bushel of it was owned by the receipt holders as tenants in common. R. L. 1905, § 2092; Hall v. Pillsbury, 43 Minn. 33, 44 N. W. 673, 7 L. R. A. 529, 19 Am. St. 209; Jackson v. Sevatson, 79 Minn. 275, 82 N. W. 634.

This is practically conceded by counsel for the state; but it is urged that the facts show that the defendant is estopped from denying its ownership of the wheat, for the purpose of taxation, because it treated the wheat as its own for all other purposes, and, further, that the de--

fendant, by violating the statute (section 2092, R. L. 1905), has in ordinary justice shut itself off from the right to take shelter under the statute. It has put its rights in a position to be determined solely by its actual relation to the wheat, and there can be no injustice in judging its liability for this tax by its own wrongful acts, resulting in profit to itself. It is a fact that the defendant, inadvertently or otherwise, treated 7,150 bushels of the wheat stored with it as its own by selling it; but from the evidence it does not appear that the defendant violated the statute as to the wheat in its elevators on May 1, 1905, or treated it as its own. The defendant had a right to mingle its own wheat with wheat of the same grade received in store for other owners, and to ship wheat from the common mass on its own account, provided the whole mass or amount was not from any cause diminished below the amount required to fill all the outstanding receipts. Hall v. Pillsbury, supra. It follows that the defendant is not estopped from asserting that it did not own the wheat in its elevator here in question. It is certain that it cannot be charged with taxes on wheat stored with it, which it did not own and which it retained for the owners, because in the past it may have been derelict in its duty as to other wheat stored with it.

The further contention was made in the district court that it was the defendant's duty to have listed this wheat for taxation in the hands of the true owners thereof pursuant to sections 816 and 824, R. L. 1905. The first section cited provides that every person of full age who is a resident of this state shall list separately and in the name of his principal all personal property controlled by him as the agent of any other person. The other section provides that grain in an elevator on a right of way or elsewhere shall be listed and assessed in the assessment district where the elevator is situated. Warehouse receipts for grain stored in elevators are symbols of the grain, and the title thereto passes by indorsement and delivery of the receipts; hence it is impracticable for the owner of an elevator to know who are the actual owners of wheat held in store by him on any particular day. It would seem that the most that the defendant could have done in this respect would have been to have furnished the assessor with the names of the original holders of all outstanding receipts. But, this aside, the fact remains that the agent or bailee is required by the statute to separately list in the

name of his principal, not in his own, personal property in his possession or control. If he fails so to do there is no statute authorizing the assessor to assess it as the property of the agent or bailee in his name.

We are in entire sympathy with the suggestions of counsel for the state to the effect that this grain ought not to escape taxation; but unfortunately our tax laws afford no practicable way whereby such a result can be now prevented. After a careful consideration of the record we are unable to find any evidence therein sufficient to sustain a finding and decision that the defendant owned the wheat here in question on May 1, 1905, or that it is estopped for the purpose of taxation from denying that it was the owner thereof.

It follows that the defendant was only liable for personal property taxes in the county of Ramsey for the year 1905 on the basis of an assessment of $250, and that the judgment appealed from must be modified accordingly.

It is so ordered.

On July 5, 1907, the following opinion was filed:

PER CURIAM.

Appeal from clerk's taxation of costs and disbursements in this court against the state. This was a proceeding in the district court of the county of Ramsey to enforce against the defendant the payment of delinquent personal-property taxes for the year 1905. Judgment was entered against the defendant in the district court for the full amount claimed for taxes, from which it appealed to this court. The judgment was here materially modified.

The defendant claims that it is entitled to tax costs against the state on the authority of State v. Buckman, 95 Minn. 272, 278, 104 N. W. 1289. The case cited is not in point. It is only in exceptional cases, where the state is the actual party plaintiff and brings an ordinary action to enforce its property rights, that costs can be taxed against the state in this court. This case does not come within the exception. See National Bond & Security Co. v. Hopkins, 96 Minn. 119, 104 N. W. 678.

Ordered that the clerk's taxation of costs against the state be and it is set aside.