**DAVIS v. CHILDERS, State Auditor, et al.**

No. 28092.   Dec. 21, 1937.

Rehearing Denied Jan. 4, 1938.

Sid White, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendants in error.

GIBSON, J. This action was brought in the district court by Hale V. Davis, as a taxpayer, attacking the amount of the appropriations made by the last, the 16th Legislature, for the ensuing biennium. House Bill No. 380, allowing the issuance of State Treasury notes to finance appropriations on account of possible failure in revenues, is attacked as unconstitutional, and injunction is asked against the Auditor and Treasurer to prevent the issuance of either nonpayable warrants or notes.

It is contended that the 16th Legislature appropriated against the general revenue fund for the fiscal year ending June 30, 1938,

34 millions of dollars, and that the revenues provided for would fall short of that amount, according to the information furnished by the Tax Commissioner; that therefore some of the appropriations are void. The plaintiff states in his petition that he does not know just how the revenues should be used, "after satisfying those (appropriations) commanded by the Constitution," but that the court should apply the principle of marshaling assets, and thus advise the defendants what appropriations to pay first and then the subsequent order of payment. Appropriations for the year ending June 30, 1939, are similarly attacked, except that the deficit, it is alleged, will be less for that year. It is contended that if nonpayable warrants or the notes provided for by House Bill No. 380 are issued, they will, to the extent of the assumed deficit, create debts in violation of sections 2 and 23 of article 10 of the Constitution.

The trial judge permitted the taking of testimony, and rendered judgment for the defendants. After ordering judgment for the defendants, the judge expressed certain opinions, which, it is urged, should be binding here. Since the case is in equity, however, we are not bound either by the reasoning of the trial court or its findings, but may, if the law and facts warrant, affirm the case if the judge reached the correct ultimate conclusion, regardless of the effect of the facts found or the reasoning of the lower court in reaching a conclusion. Board of Equalization of Oklahoma County v. First State Bank of Oklahoma City, 77 Okla. 291, 188 P. 115.

Scott Stine, Assistant State Auditor, L. D. Melton, Research Director of the Oklahoma Tax Commission, and Dr. J. M. Ashton, of the State Chamber of Commerce, were called as witnesses, and the following facts, in brief, were disclosed: That appropriations for the year ending June 30, 1938, in the sum of approximately $34,000,000 had been made, chiefly distributed in general as follows: Slightly less than one-ninth to the legislative, executive, and judicial departments, a little less than one-third to the state institutions, approximately one-seventh to the Public Welfare Board, and nearly two-fifth to the common schools. To finance these appropriations are the revenues accruing from the gross production, income, cigarette, motor vehicle excise, use, inheritance, corporation license, insurance taxes, miscellaneous fees, and surplus.

Each of these witnesses furnished estimates as to the amount of income which,

470

in his opinion, could reasonably be expected to accrue from the designated tax sources. Mr. Stine testified he had had ten years' experience in making such estimates, and that from the information had in May, 1937, it reasonably appeared that the appropriations could be financed. His written estimate of various receipts was offered in evidence. Estimates made by the Tax Commission in December, 1936, February, 1937, and May, 1937, were submitted, which tended to show that the Tax Commission believed the revenue would fall far short of the appropriations. Mr. Melton testified, however, that the commission's estimate was intentionally made conservative and low, and that some of the estimates, in total, had been as much as six millions of dollars short of collections actually made by the commission for the period covered by the estimate. He stated, also, that the Legislature was furnished monthly statements of collections and that these statements showed an increase from month to month after December. Dr. Ashton's estimates were somewhat similar to Mr. Melton's.

Two members of the Legislature were called in an attempt to show that the Legislature knew that the revenues would be insufficient, and attempt was also made to show that the Governor was informed of the prospective deficit before he approved the appropriations. A letter from the Governor was offered in evidence, but not received, wherein the Governor gave his reasons for believing that the revenues would probably be sufficient.

It was contended at the trial, and is here, that the Legislature and Governor did not act in good faith, and that they could base their action only on the estimate made by the Tax Commission and furnished the Governor under a provision of the statute creating the Tax Commission. It is also contended that this court has a right to review the matters before the Legislature, and if it finds as a fact that the Legislature appropriated more than the revenue will finance, then this court should advise the defendants which appropriations have priority.

If we should assume that such an action may be maintained wherein the courts can find as a fact how much revenue will be received to finance appropriations, and "lop off" the excess appropriations, it cannot be said that the evidence offered meets that certainty which would warrant a finding to that effect. We find no constitutional or legislative edict that restricts the Legislature to the estimate made by the Tax Commission. It is asserted that House Bill No. 1, 13th

Legislature 1931 (sec. 9, ch. 66, art. 1, Session Laws 1931), empowering the Tax Commission to recommend laws to the Governor, so restrict both the Governor and the Legislature. We find nothing in that act to indicate that the Legislature in any way intended either to restrict itself or any succeeding Legislature, nor do we know of any constitutional provision whereby one Legislature could so bind another.

It is proper that such reports and recommendations should be made to the Governor, and no doubt they furnish desirable and useful information, data, and estimates for the legislative body. But the Legislature is not circumscribed by the opinions of one body, or limited to the estimates of one group or officer. It can use such informations as is contained in the reports or recommendations of the commission, or such other information as to receipts, conditions, percentages of increase or decrease in collections, probable income from new sources of revenue, increases or decreases in business earnings, or any other pertinent facts it may deem appropriate, upon which to base its estimate. It is not bound by any one or more sources of information, nor is there any requirement that prohibits the individual members from obtaining such information as they individually desire and basing their judgment thereon. The Constitution has delegated the power of making appropriations and providing the current revenue therefor to the legislative body, and we find no authority for the courts to inquire into the motives of the legislators.

Before the repeal of the ad valorem tax provision in the Constitution, the Legislature made the appropriations and left to the State Board of Equalization the power to fix the levy to be made, which was only after estimating the income from other sources. It seems that estimates of income from sources other than ad valorem taxation were sometimes furnished to this board by the State Auditor, the State Examiner and Inspector, and the Governor. The Legislature had delegated to the board the right to make estimates, but "it might have reserved to itself the duty of making the mathematical calculations and estimates necessary to be made." El Reno Wholesale Grocery Co. v. Taylor, 87 Okla. 140, 209 P. 749. Unlike municipal estimates of revenues, the state authorities were not required to limit their estimates to receipts for the prior year; nor do we find any provision requiring that such be now done.

Furthermore, differently from some other Constitutions, our Constitution does not pro-

vide that revenues shall be determined first and appropriations made accordingly. The contrary is true. "The. amount of taxes levied, under our Constitution, is dependent upon the amount of the appropriations." Hudson v. Carter, 167 Okla. 32, 27 P. (2d) 617. See, also, Graham v. Childers, 114 Okla. 38, 241 P. 178. The lower court followed these two prior decisions of this court. We are asked here to overrule these cases. We see no necessity or reason for so doing. The prerogative to amend the constitutional provisions lies with the people, not the courts.

That the Legislature is not bound by any hard and fast rule based on the amount of income received is further demonstrated by section 3 of article 10 of the Constitution. which provides that if the expenses of any fiscal year shall exceed the income, the Legislature may provide for levying a tax for the ensuing fiscal year to pay the deficiency. It was clearly, therefore, within the power of the Legislature to use its judgment as to whether the revenues provided reasonably would take care of the appropriations, and if it has erred, it may still, under section 3, levy taxes for any deficiency that may accrue and be within the constitutional authority.

In Graham v. Childers, 114 Okla. 38, 241 P. 178, it is said that if the Legislature from lack of proper statistical information failed to make sufficient appropriation to carry out a proper purpose, it would not be precluded from so doing at a subsequent session of the biennial term. The court said:

"* * * There can be no known method to ascertain how much revenue will come into the State Treasury during any given fiscal year from sources other than ad valorem taxation. Therefore, the balance sheet, when finally closed for a given fiscal year, may show a surplus in a large amount, while for another fiscal year it may show a deficit. Conditions beyond the foresight of any one may bring about this situation; hence, foreseeing this last contingency, said section 3 of art. 10 was made the safety valve."

The Legislature and the Governor must be presumed to have acted on proper information and acted in good faith. The Legislature's intention can only be shown by its vote.

"If the intent of the Legislature is to be shown by inquiring of the members what was intended, it would be necessary to interrogate all the members of both the Senate and the House. Besides being an in-terminable job, it is not conceivable that a common intent would be the result." Barlow v. Jones (Ariz.) 294 P. 1106.

Cases from other states are cited, and we are asked to follow them, rather than our own prior decisions. An examination of these cases, however, shows important distinctions in constitutional provisions in some of the states. Thus in Colorado, Montana, and Idaho, the Constitutions expressly provide that no appropriation shall be made or expenditure authorized whereby the total tax then provided by law for said fiscal year be exceeded. Kentucky cases are cited because, it is said, our Constitution was taken from Kentucky. (In Graham v. Childers, supra, we said similar provisions were found in the Constitutions of many states.) But we find that the Kentucky Court of Appeals has held that if the Legislature, "without proper statistical information, or for any other reason, overestimates the revenue on hand or incoming, and fails to make provisions for sufficient funds to carry out the appropriations," this does not nullify the appropriations. State Budget Commission v. Lebus (Ky.) 51 S. W. (2d) 965.

We find nothing in any of the cited cases that warrants the overturning of our long standing interpretation of our own Constitution.

The constitutionality of House Bill 380 was not decided by the trial court, and is not determined here.

It follows from what has been said that the judgment of the district court in favor of the defendants is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, and HURST, JJ., concur. DAVISON, J., absent.