STATE v. G. O. McCOY AND OTHERS.
SHAVER, HEHL, AND RETTINGER, APPELLANTS.[1]

May 13, 1949.

No. 34,818.

[1]Reported in 38 N. W. (2d) 386.

*W. L. Hursh,* for appellants.

*J. A. A. Burnquist,* Attorney General, and *George G. Edgerton,* Special Assistant Attorney General, for the State.

FRANK T. GALLAGHER, JUSTICE.

On May 8, 1915, defendant Samuel Rettinger, on behalf of himself, Bayard T. Shaver, and August C. Hehl, acting as trustees for beneficiaries of a trust who did not appear in this action, deposited $397.67 in the State Bank of Long Lake, Long Lake, Minnesota, and was issued a certificate of deposit, bearing four percent interest and

payable one year from date, to evidence the deposit. On November 1, 1917, Rettinger, on behalf of himself, Bayard T. Shaver, and August C. Hehl, acting as trustees for the same beneficiaries, deposited $265 in the same bank and received the same type of certificate as evidence of that deposit. Both of these certificates are still outstanding and unpaid, and defendants have not dealt with the deposits by adding thereto or withdrawing therefrom from the date of the deposits to the time of the commencement of this action, June 11, 1947. Rettinger was given custody of these certificates, but he has since inadvertently lost or misplaced them.

From the time when the original deposits were made until the commencement of this action, defendants had frequently discussed the matter of these deposits among themselves, and, upon inquiry, Rettinger had reported to individual beneficiaries of the trust that the money was still on deposit. In 1946, the cashier of the bank spoke to Rettinger about the deposits and informed him that he would have to post a bond to get either the money or new certificates of deposit. Rettinger did nothing in this regard prior to this suit by the state.

On June 11, 1947, the attorney general, in the name of the state, commenced this action under M. S. A. 48.525 to have the deposits declared escheated and to enforce the rights of the state. The procedural requisites under the statute were fulfilled, and defendants interposed an answer denying that they had abandoned the funds left on deposit. Section 48.523 provides:

"Any person who has left on deposit, or otherwise, with any banking institution or financial institution any funds or other property, and has not dealt therewith for a period of 20 years by adding thereto, withdrawing therefrom, or asserting any claim thereto, is presumed to have abandoned the same."

The trial court found that the funds had been abandoned, and it concluded that the funds had therefore escheated to the state and that the state was entitled to them. Defendants moved for amended

findings and conclusions or, in the alternative, for a new trial, and from the order denying that motion they appeal.

■ Section 48.522 provides:

"When any person abandons any funds or other property which have been left on deposit, or otherwise, with any banking institution or financial institution, the same shall, with the increase and proceeds thereof, escheat to and become the property of the state."

The above section operates only upon *abandoned* funds and transfers title therein to the state. Therefore, the only question for our decision here is whether or not there was an abandonment of these funds and, as a consequence, an escheat to the state. Defendants contend that, since they have appeared and defended the action by the state to have these funds declared escheated, it cannot be said that they have abandoned the funds, and that therefore the trial court's finding that "defendants, and each of them, have abandoned the funds" was not justified by the evidence.

In a general sense, abandonment is the voluntary relinquishment, surrender, or disclaimer of a known property right, absolutely and without reference to any particular person or purpose. It involves two elements—act and intention—and without the concurrence of these there can be no abandonment. There must be an actual relinquishment of possession accompanied by an intent to part permanently with property in the goods. Erickson v. Sinykin, 223 Minn. 232, 26 N. W. (2d) 172; 1 Am. Jur., Abandonment, § 2; 1 Dunnell, Dig. & Supp. § 1. Abandonment is an issue of fact and is determined by the trier of fact. State v. N. W. Nat. Bank, 219 Minn. 471, 486, 18 N. W. (2d) 569, 577. Goods are abandoned when an owner, with specific intent to relinquish his ownership in the property, casts the property aside, or when an owner who has accidentally lost his property ceases to look for it and gives it up as gone from him forever. Brown, Personal Property, § 6, p. 9.

Findings of fact of a trial court are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. This

rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708.

Section 48.523 raises a statutory presumption that any person who has left funds on deposit, or otherwise, with any bank and has not dealt with these funds by adding thereto or withdrawing therefrom or asserting any claim thereto for a period of 20 years has abandoned them. This presumption, of course, is not evidence, but a rule of law dictating decision on unopposed facts and shifting the burden of going forward with the evidence to the party against whom the presumption operates. State v. N. W. Nat. Bank, 219 Minn. 471, 18 N. W. (2d) 569, *supra.* Under the facts and circumstances of the instant case, this presumption operated to sustain the state's original burden of proof and to shift the burden of going forward with the evidence to defendants. By their appearance in this action, defendants have rebutted this presumption and have shown that their intention never was to relinquish their claim to these funds. This intention is a necessary element of abandonment, and without it the state cannot establish the fact upon which its right depends.

Section 48.527 provides in part:

"Any person claiming to be legally entitled to any of the funds or other property involved in any action commenced under the provisions of section 48.525, *who did not appear in said action,* may, within a period of ten years after the entry of judgment therein, sue the state to recover the funds or other property of which it was alleged he was the owner or depositor, * * *." (Italics supplied.)

It cannot reasonably be contended that defendants, who answered the state's complaint and appeared in this action to contest the state's claim of abandonment, should, by the terms of § 48.527, forfeit their right under that statute and be in a worse position than if they had failed to answer the complaint, but had appeared within the next ten years to assert their claim to the fund. In spite of their appearance and in spite of the evidence introduced by defendants

at the trial to show their intention to continue to exercise dominion over the fund, the trial court found that defendants had abandoned the fund. Outside of the presumption raised by the statute, which defendants have rebutted effectively, we find no evidence in the record to support this finding.

■ Where the facts of a case are in dispute, this court will not make or amend findings of the trial court, or even remand a case with directions that the findings be amended in accordance with this court's decision. However, where possible within the limits of this court's appellate jurisdiction, the merits of a case will be determined, Droege v. Brockmeyer, 214 Minn. 182, 7 N. W. (2d) 538; Penn A. M. Co. v. Clarkson Sec. Co. 205 Minn. 517, 520-521, 287 N. W. 15, 17, and a new trial will not be granted simply because the findings of the trial court are not supported by the evidence if proper findings can be directed by the supreme court without injustice to the parties. Cf. Hunt v. Meeker County A. & L. Co. 135 Minn. 134, 160 N. W. 496.

In the instant case there is no need for a new trial. The case is therefore reversed with directions to amend the findings and conclusions to show that there was no abandonment.

So ordered.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On June 24, 1949, the following opinion was filed:

PER CURIAM.

Appeal from clerk's taxation of costs against the state and in favor of defendants. The basis of the objection is that the state was acting in its sovereign capacity and that no costs or disbursements should be taxed against the sovereign in the proceedings involved, and for the further reason that such taxation is not expressly authorized by statute.

The attorney general, in the name of the state, commenced the action under M. S. A. 48.525 to have the deposits declared escheated and to enforce the rights of the state. As stated in our opinion in the case, the procedural requisites under the statute in connection

with the commencement of the action were fulfilled, and defendants answered denying that they had abandoned the funds left on deposit in the State Bank of Long Lake, Long Lake, Minnesota. We held that there had been no abandonment of the funds, and the order of the district court was reversed with directions to find that there was no abandonment.

The principal question involved here in connection with the taxation of costs is whether the state was acting in its sovereign capacity or whether it was involved in an ordinary action for the recovery of money or property.

In State v. Buckman, 95 Minn. 272, 104 N. W. 240, 289, it was held that the state was liable for costs and disbursements in a civil action brought by it to recover damages for trespass alleged to have been committed upon its lands by defendant. A demurrer to the complaint was interposed, which was sustained by the trial court and affirmed on appeal. Defendant then gave notice of taxation of costs and disbursements, to which the state objected on the ground that no costs or disbursements except clerk's fees were taxable against the state. The clerk's taxation of costs in favor of defendant was affirmed.

The rule in the Buckman case as to taxation of costs and disbursements controlled in State v. Fullerton, 124 Minn. 151, 144 N. W. 755, where the state attempted to recover $18,372.75 from the treasurer of the state board of medical examiners. There, the trial court sustained defendant's demurrer to the complaint, which was affirmed by this court. The clerk's taxation of costs and disbursements in favor of defendant was also affirmed. The court said (124 Minn. 154, 144 N. W. 756):

"* * * The present action is not, strictly speaking, one by the state in its governmental capacity, any more than was the Buckman case. Each proceeded upon the theory of an alleged property right; in the Buckman case, the right to damages for trespass upon state lands, and in this case, the right to money alleged to be the property of the state and to be wrongfully detained by the defendant. The governmental authority was not involved in either action.

Such authority is involved in penal actions, in those to enforce the payment of taxes, (State v. Northwestern Elev. Co. 101 Minn. 192, 112 N. W. 68, 1142) or to determine the legality of the organization of a municipal subdivision of the state, (State ex rel. Simpson v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539) but not in an ordinary action for the recovery of money or property."

In State ex rel. Smiley v. Holm, 186 Minn. 331, 243 N. W. 133, it was held that costs and disbursements were not taxable in this court against the secretary of state when his conduct involved in the litigation pertained to his governmental duties in the interest of the state. In that case, the secretary of state, presumably acting under the advice of the attorney general, was administering his office in obedience to a resolution which the governor had vetoed, but it was claimed that the veto was ineffectual. This court, in State ex rel. Smiley v. Holm, 184 Minn. 228, 238 N. W. 494, sustained the contention of the secretary of state, and costs and disbursements were taxed against relator in the sum of $69.25, which he paid. Relator later appealed from a final judgment, which was affirmed by this court in State ex rel. Smiley v. Holm, 184 Minn. 647, 238 N. W. 792. This judgment was reversed upon review by the United States Supreme Court. Smiley v. Holm, 285 U. S. 355, 52 S. Ct. 397, 76 L. ed. 795. After the case was returned to this court, relator, upon notice, applied to the clerk for taxation of costs and disbursements aggregating $283.25, including the $69.25. The clerk construed the secretary's conduct as the acts of a constitutional officer of the state in relation to governmental affairs of the state and disallowed the application. Relator then appealed. Relator taxed costs in the United States Supreme Court. Under a rule in that court, costs and disbursements are taxed against a state just the same as against any other litigant. Fairmont Creamery Co. v. Minnesota, 275 U. S. 70, 48 S. Ct. 97, 72 L. ed. 168. That is not true in this court. In that case we said (186 Minn. 332, 243 N. W. 133):

"When the state acts in its sovereign capacity, costs and disbursements cannot be taxed against it. Respondent here acted for

the public. He represented the state. For all practical purposes he was the state. His error in judgment does not change the situation. It is only in exceptional cases that the state is liable for costs and disbursements. While acting in its sovereign character it is immune; but when it descends to the level of those with whom it associates and interests itself in property and proprietary rights as distinguished from governmental prerogatives, it subjects itself to the same liability for costs and disbursements as any litigant. The statute which allows costs and disbursements 'in every action,' G. S. 1923 (2 Mason, 1927) § 9473, is subject to this exception in favor of sovereignty."

It appears to us that the rule applied in the Buckman and Fullerton cases is applicable here. The state proceeded upon the theory of an alleged property right—the right to have the funds involved escheat to the state in the event that they had been abandoned. If the state had prevailed and no one had claimed the abandoned funds within the statutory time, the state rightfully would be entitled to the money. For that reason, it appears to us that this is not an action in the nature of a penalty, such as one to enforce the payment of taxes, but that it is an ordinary action for the recovery of money or property.

The clerk's taxation of costs and disbursements is affirmed.