**James G. PATTILLO et al., Plaintiffs/Appellants,**

v.

**James R. SCHLESINGER et al., Defendants/Appellees.**

No. 78–2531.

United States Court of Appeals, Ninth Circuit.

Submitted May 7, 1980.
Decided Aug. 8, 1980.

fact Raz quotes statements by Lindstrom that support the Chairman's affidavit on these matters.

James D. Bassage, Pattillo & Bassage, Santa Barbara, Cal., for plaintiffs/appellants.

Stephen D. Petersen, Asst. U. S. Atty., Los Angeles, Cal., for defendants/appellees.

Before WALLACE and POOLE, Circuit Judges, and MacBRIDE,* District Judge.

MacBRIDE, District Judge:

Executive Order 11692 adjusted upward the rates of basic monthly pay for members of the uniformed services of the United States. By its terms, the Order was effective on January 1, 1973. Pursuant to the mandate of *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C.Cir.1974), *further appeal*, 521 F.2d 317 (D.C.Cir.1975), however, President Nixon signed Executive

---

* Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

Order 11778 on April 12, 1974, thereby retroactively revising the effective date of the pay adjustment from January 1, 1973 to October 1, 1972. As a result, the millions of men and women who served in the Armed Forces or other uniformed services of the United States during the last quarter of 1972 became eligible to receive payment for the retroactive pay increase.

As revealed in affidavits and evidence presented to the district court, those eligible members of the uniformed services who were still on active duty in July 1974 received their retroactive pay increase with little or no effort. Their identity and location could be determined and verified through active government records. As to those persons who had separated or transferred from service or had shifted from active to inactive reserves between October 1972 and July 1974, however, serious problems in identifying and locating eligible former service personnel have hampered efforts to fulfill the Government's admitted obligation to pay the retroactive benefits.[1] Although the parties dispute the exact number of former service personnel entitled to receive back pay who have not yet applied for payment, even the United States concedes that there are several hundred thousand persons so far unidentified and/or unlocated who are entitled to payments ranging from approximately $10 for reservists and National Guard personnel to a maximum of $100 to $300 for former full-time personnel.

Plaintiff Pattillo, later joined by two other named plaintiffs, brought a class action alleging that the United States had failed to fulfill its obligation to locate and pay all former uniformed service personnel entitled to back pay. The complaint set out three claims for relief: breach of a legal duty, breach of the service contracts of the class members, and denial of equal protection,

and it prayed that the Secretary of Defense be commanded to pay the class members the unpaid retroactive pay and that a judgment be entered in favor of class members for retroactive pay, for costs, and for attorneys' fees. The district court denied plaintiffs' motion for certification of the class and dismissed the action. We affirm.

## I.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, one or more members of a class may prosecute a class action only if certain prerequisites are satisfied. The Rule requires, *inter alia*, a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." F.R. Civ.P. 23(a)(3), (4). Moreover, in an action such as this, it must also be shown that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." F.R.Civ.P. 23(b)(3). The district court concluded after hearing oral argument and testimony that plaintiffs had failed to demonstrate satisfaction of the prerequisites. Such a decision is reviewable on appeal only for abuse of discretion or for application of impermissible legal criteria. *E. g., James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979); *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977).

Plaintiffs admitted their inability or unwillingness to assume the considerable cost of notifying class members of the litigation, but they proposed to solve this problem by requesting that the district court order the United States to bear the expense. Whatever the merits of that proposal, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178–79, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974), plaintiffs had no satisfactory response when the district court

---

1. The evidence presented to the district court reveals that the problems have been most acute in connection with former Army and National Guard personnel. The various services differ in their record search and retrieval capabilities because of the differing methods adopted for storage and classification of records. Thus,

while the Air Force was able to locate almost all of the former Air Force personnel entitled to back pay through its computerized information retrieval systems, the Army was and is obligated to conduct a laborious hand search through its old records.

pointed out that fairness to the class members would require that any such notice inform the class that the speed and amount of recovery would be increased by opting out of the class and filing a separate claim directly with the particular branch of the uniformed services with which the class member had served. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 238 (9th Cir. 1974) (Duniway, J., concurring), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). Moreover, even if a class of sufficient size to justify certification were created by those members who chose not to opt out, the use of a class action procedure is not superior to the ongoing administrative proceedings for the notification and payment of former service personnel. The plaintiffs proposed no new means of identifying, locating and notifying those entitled to payment. Although the district court expressed dissatisfaction with the languid efforts of the defendants, particularly of the Army, *e. g.*, Reporter's Transcript at 57–62, 74–76, the court also found that the proposed class action was not an appropriate vehicle to spur the defendants to more vigorous efforts. Furthermore, the court found that any claims paid through the class action procedures would be reduced by the costs of suit and attorneys' fees that plaintiffs sought. The district court and this court cannot be unaware of the fact that the principal beneficiaries of the class action would be plaintiffs' attorneys.[2]

Having heard the evidence and considered the matter in depth, the district court concluded that certification of a class action would be inappropriate in view of the nature of the case, the characteristics of the named plaintiffs, the relationship between plaintiffs' attorneys and one of the proposed class representatives, and the surrounding circumstances. A careful review of the record reveals the propriety of that conclusion; denial of plaintiffs' motion for class certification was clearly within the discretion of the district court. We affirm.

## II.

In addition to denying plaintiffs' motion for class certification, the district court dismissed the action in its entirety, holding that plaintiffs could not obtain relief through a writ of mandamus for breach of a legal duty and that there was no justiciable controversy as to the contractual and equal protection claims for relief because the individual plaintiffs had failed to exhaust their administrative remedies. On these points also, we affirm.

 Mandamus is an appropriate remedy only when necessary to compel an official to perform an act that is a positive command, so plainly prescribed as to be free from doubt. The entitlement must be clear and certain and the duty of the official ministerial. *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). In this instance, the entitlement of former service personnel who served during the last quarter of 1972 is clear and free from doubt by virtue of statute, executive order and prior court rulings. It does not follow, however, that mandamus should lie. The defendants do not dispute entitlement. The issue plaintiffs raise by their complaint is not entitlement but methods of payment.

**2.** At one hearing, the district court inquired as to the request for attorneys' fees:

> THE COURT: What do you think [the fee] might be that you would be asking in this case?
> MR. BASSAGE: We were very humble and asked for one-third.
> THE COURT: One-third of what?
> MR. BASSAGE: I think at the time that the lawsuit was instituted, it was eighteen million.
> THE COURT: So you would be humble enough to ask for about $5,000,000; is that it?

MR. BASSAGE: Right, your Honor.
Reporter's Transcript at 38; see Complaint at 5–6. In addition to the fact that the benefits of an attorneys' fee award to plaintiffs' counsel would far exceed the benefits to class members, the district court recognized the potential difficulties presented by the fact that plaintiff Pattillo's father was a member of the law firm that sought to appear as class counsel. Reporter's Transcript at 5. *See generally Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978); *Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977).

There are a variety of possible methods of notification and payment that might be devised, and no clear command exists to mandate the selection of any particular method. Under these circumstances, mandamus is not an appropriate or permissible remedy, and the district court correctly dismissed the action insofar as it sought mandamus for breach of a legal duty. *Legal Aid Society v. Brennan*, 608 F.2d 1319, 1331–32 (9th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 3010, 65 L.Ed.2d —— (1980); *Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1288–90 (9th Cir. 1979); *Smith v. Grimm, supra.*

■ Exhaustion of administrative remedies is not an absolute requirement under all circumstances, and there exist instances in which "the 'particularities' of a concrete set of facts" will justify relaxation of an otherwise applicable exhaustion requirement. *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir. 1978); *see Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *McGee v. United States*, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). This case does not present such an instance. *Murillo v. Matthews*, 588 F.2d 759, 763–64 (9th Cir. 1978). Plaintiffs' constitutional challenges to the methods employed in notifying former service personnel do not survive scrutiny, and the individual plaintiffs may obtain complete relief through the existing administrative procedures. Accordingly, the district court properly concluded that the individual plaintiffs must exhaust administrative remedies prior to instituting suit.

We have considered plaintiffs' contentions on appeal and found them without merit. Accordingly, the judgment of the district court is

AFFIRMED.