1999 OK CIV APP 100

**Michael SHOLER, Sharon Morales, Anastasia E. Dalton, and Calvin McCaskell, Jr., Plaintiffs/Appellants, Counter–Appellees,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, David R. McBride, Commissioner, Defendant/Appellee, Counter–Appellants.**

No. 91620.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 29, 1999.

Rehearing Denied July 2, 1999.

Certiorari Denied Oct. 5, 1999.

Bob G. Carpenter, Richard D. Laquer, Carpenter & Laquer, Oklahoma City, Oklahoma, For Appellants, Counter–Appellees.

Guy L. Hurst, Asst. Attorney General, Wellon Poe, Asst. Attorney General, Oklahoma City, Oklahoma, and Lisa McLaughlin–Molinsky, Jerry Lynn Metcalfe, Oklahoma City, Oklahoma, For Appellee, Counter–Appellant.

## OPINION

Opinion by KENNETH L. BUETTNER, Presiding Judge:

¶ 1 This is the second appeal of this case. Appellants/Counter–Appellees, Michael Sholer, Sharon Morales, Anastasia E. Dalton, and Calvin N. McCaskell, Jr. (Sholer, et al.), filed a class action against Appellee/Counter–Appellant, the State of Oklahoma ex rel. Department of Public Safety (DPS), seeking refunds of multiple reinstatement fees and additional fees, punitive damages, and certification of a class of persons who had paid multiple reinstatement fees.[1] The trial court ruled in favor of Sholer, et al., certified the class, and ordered the refund of the multiple reinstatement fees, but denied the refund of additional fees. DPS appealed, and Sholer, et al. counter-appealed, that decision in *Sholer, et al. v. Dept. of Public Safety*, 1995 OK 150, 945 P.2d 469 (*Sholer I* ).

¶ 2 The court in *Sholer I, inter alia,* partially adopted the holding of *Fink.* Refunds for overpayments made after July 7, 1993 (the date this case was filed) were not addressed. The *Sholer I* court vacated the order certifying the class because no evidentiary hearing was conducted, and remanded the matter for the trial court to consider

evidence on certification of a class. Upon remand, the trial court did certify a class (Class A) consisting of those individuals who paid multiple reinstatement fees and additional fees after July 6, 1990 and before July 8, 1993, less any reinstatement fees previously refunded, with interest from the date of over payment to the date of refund. The trial court refused to certify a class consisting of individuals paying the multiple reinstatement fees and additional fees and/or the incorrect additional fee after July 7, 1993. The trial court awarded costs to Sholer, et al. the prevailing party.

¶ 3 On appeal, Sholer, et al. contend the trial court erred in failing to certify a "Class B" consisting of individuals that paid the multiple reinstatement fees and additional fees and/or the incorrect additional fee after July 7, 1993, and did so without explanation. DPS counter-appeals and contends the trial court erred in certifying a class (Class A) of individuals who paid multiple reinstatement fees and additional fees after July 6, 1990, and before July 8, 1993, because (a) the statutory prerequisites were not met, (b) the evidence does not support such a certification or maintenance of the class, and (c) there is no common fund or statutory authority to pay the judgment, and therefore class action against DPS is improper. Also, DPS contends the trial court erred in ruling Appellants were entitled to costs. We hold the certification of Class A was proper and that the court abused its discretion in declining to certify Class B. The trial order is affirmed in all other respects.

¶ 4 A party seeking certification of a class has the burden of satisfying all four requirements of 12 O.S.1991 § 2023(A) and at least one of the criteria required by 12 O.S.1991 § 2023(B).[2] The proposed class may be certi-

---

1. The practice of collecting such fees was held to be improper in *Fink v. State ex rel. Dept. of Public Safety,* 1992 OK CIV APP 169, 852 P.2d 774.

2. 12 O.S.1991 § 2023. Provides in pertinent part:
A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. The representative parties will fairly and adequately protect the interests of the class.
B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

fied "only if" all four criteria in § 2023(A) are met plus one of the prerequisites under § 2023(B). See, *Shores v. First City Bank Corp.*, 1984 OK 67, 689 P.2d 299.

¶ 5 In its order certifying Class A, the trial court found 1) the numerosity requirement had been satisfied based on DPS's July 3, 1995 affidavit stating that 24,000 persons are eligible for refunds and that joinder of all members is impracticable; 2) there are questions of law or fact common to all members of the class and the claims of the representatives are typical of the members of the class; 3) the questions of law or fact common to the class members predominate over any individual questions and that individual actions would be uneconomical, making a class action superior to any other method for fair and efficient adjudication of the controversy; 4) the attorneys for Sholer, et al. have shown themselves to be qualified, competent and experienced in handling a class action and the representatives have shown they will follow court orders and are interested in a full refund for each class member; 5) there is no collusion between Sholer et al. and their attorneys to benefit some class members to the detriment of others and the representatives are not antagonistic to any putative class members; and 6) Sholer, et al. will have competent consultants to assist in the distribution of funds to class members. Thus, the trial court found all of the requirements of 12

O.S.1991 § 2023(A) had been met as well as the requirement of 12 O.S.1991 § 2023(B)(3).

¶ 6 A trial court's decision to grant or deny certification of a class will not be disturbed absent an abuse of discretion. *Black Hawk Oil Co. v. Exxon*, 1998 OK 70, ¶ 10, 969 P.2d 337; *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 4, 689 P.2d 299. When certification is a close question it will be sustained because the trial court has the opportunity to modify the class during the trial on the merits. *Black Hawk Oil Co.*, *supra*, citing *Perry v. Meek*, 1980 OK 151, ¶ 19, 618 P.2d 934. On appeal, DPS challenges the trial court's findings under 12 O.S.1991 § 2023(B)(3).

¶ 7 DPS first asserts that a class action is not superior to other methods of "fair and efficient distribution of refunds." However, § 2023(B)(3) requires the court to find that a class action is superior to other methods of *adjudication* of the controversy. DPS argues that its commissioner testified that DPS planned to voluntarily provide the refunds and that therefore, a class action is unnecessary.

¶ 8 However, the evidence indicated that, while DPS had undertaken to provide refunds for 1300 potential class members, DPS had not received an appropriation for the five million dollars it estimated would be required to provide refunds to all who overpaid reinstatement or additional fees.[3] Fur-

1. The prosecution of separate actions by or against individual members of the class would create a risk of:
   a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
   b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
   a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
   b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
   c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
   d. the difficulties likely to be encountered in the management of a class action.

3. DPS argues that no common issue of law or fact remains because its liability has been determined in *Sholer I* and because it has voluntarily made some refunds and plans to voluntarily make the remaining refunds once it receives an appropriation. However, other courts have held that a defendant's tender of the plaintiffs' personal claims will not moot a timely-filed and dili-

ther, without the class certification, only the named plaintiffs have an enforceable judgment. DPS asserts that *Sholer I* will inure to the benefit of all affected persons, regardless of class certification. However, the *Sholer I* decision simply affirmed the trial court's application of *Fink, supra,* which held that DPS could not charge multiple reinstatement fees. *Sholer I* did not provide an enforceable judgment to all potential class members. Indeed the Supreme Court remanded the matter to the district court to take evidence on the issue of certifying a class, rather than simply overruling the certification outright. We therefore find the trial court did not abuse its discretion in finding that a class action was superior to other methods of adjudication.

■ ¶ 9 Additionally, DPS asserts it is better suited to administer the refunds, and that a class action is therefore unnecessary. The proper administration of the refunds is not relevant to whether the court abused its discretion in certifying a class which will be able to enforce a judgment against DPS. We also note that the evidence did not establish that the representatives and their counsel would not administer the class appropriately.[4]

■ ¶ 10 DPS next argues that certification was error because the class representatives will not protect the best interests of the class. DPS asserts the fact that one member of the putative class testified he did not want to be part of the class proves that the class representatives would not protect the best interests of the class. However, the class member's primary complaint was that he did not want to be part of the contingent fee

agreement. That class member conceded that his claim against DPS would not be worth hiring an attorney to file an individual lawsuit. That circumstance is a prime reason why a class action is a superior method of adjudicating the controversy. See *Roper,* 100 S.Ct. 1166, supra note 3. Further, 12 O.S.1991 § 2023(C) provides putative class members may opt out of the class. Therefore that class member has the opportunity to avoid membership in the class. We are not persuaded that a particular class member's dispute with the attorney fee agreement made by the named plaintiffs proves that the class members will not protect the best interests of the class or that the trial court abused its discretion in this finding.

■ ¶ 11 DPS next asserts that certification was error because the funds with which it will make the refunds are in the state treasury rather than under the control of the district court.[5] The trial court correctly noted that the source of the refunds was not relevant to the issue of certification. How to pay a judgment entered against it is a matter for DPS' determination after judgment. Further, DPS cites *Whig Syndicate, Inc. v. Keyes,* 1992 OK 95, 836 P.2d 1283, for the proposition that a class action is not proper in an action to restrain the collection of taxes. DPS argues that, because the opinion in *Sholer I* analogized a case for money had and received to a case for a tax refund, that class certification is improper in this case.

■ ¶ 12 The court in *Whig Syndicate* affirmed the long standing rule that cases challenging a tax are not proper for class action because each taxpayer's tax is assessed differently and therefore there is no common

---

gently pursued class action. See *Lusardi v. Xerox Corp.,* 975 F.2d 964, 982–3 (3rd Cir.1992); *Deposit Guaranty Natl. Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

4. DPS questioned a named plaintiff regarding whether he understood a computer-generated record ostensibly showing the amount of refund due a class member. The witness could not determine the amount of refund on first reading. DPS asserted at trial this indicated the class representatives were not able to administer the class effectively. However, DPS's own computer programmer testified that DPS's attorneys would not be able to understand the same records. We therefore find the evidence failed to establish that

Sholer et al. are particularly unable to administer the class. We note the trial court's finding that consultants would assist in administering the class.

5. DPS relies on *Oklahoma Tax Comm. v. Ricks,* 1994 OK 115, 885 P.2d 1336. That case held that a trial court's equitable powers allow attorney fees to be awarded out of a "common fund" created by the attorney's efforts. That case did not address the propriety of paying refunds out of a common fund, only counsel fees. As will be discussed below, the attorney fees in the instant case result from a contingent fee agreement.

issue for the class to pursue. The instant case does not involve taxes. The *Fink* and *Sholer I* opinions affirmed that DPS erroneously applied the statute regarding reinstatement fees and additional fees for suspended licenses. All members of the class are similarly situated in that they are due a refund as a result of the misapplication of a statute, not the miscalculation of individual taxes.

¶ 13 Under this subproposition, DPS also raises the issue of attorney fees.[6] DPS asserts that this case is similar to class certifications which have been denied because the only parties to benefit from the certification would be the class attorneys. See *Pattillo v. Schlesinger*, 625 F.2d 262 (9th Cir.1980).[7] DPS also argues that it was not allowed to contest the issue of attorney fees. The named plaintiffs in this matter signed contingent fee agreements with their counsel. The trial court refused to let DPS challenge attorney fees at trial, finding the issue was a contractual matter between Sholer, et al. and counsel. The issue of counsel fees is premature for review because the court did not rule on the issue. Contingent fee agreements may be appropriate in class action cases, in spite of the potential for a "windfall" fee result.

¶ 14 Many courts have held, however, that once a class is certified and a decision on the merits is had, the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members.[8] The United States Supreme Court has explained:

> The use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise. Plainly there has been a growth of litigation stimulated by contingent-fee agreements and an enlargement of the role this type of fee arrangement has played in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost. The prospect of such fee arrangements offers advantages for litigation by named plaintiffs in class actions as well as for their attorneys. For better or worse, the financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the "private attorney general" for the vindication of legal rights; obviously this development has

---

**6.** We agree with DPS that attorney fees are allowed only pursuant to statute or contract. *Okla. Tax Comm. v. Ricks, supra*, 885 P.2d at 1339. Here there was a contract for attorney fees, at least regarding the named plaintiffs.

**7.** *Pattillo* differs from the instant case. In *Pattillo*, military service members filed a class action alleging that the military branches were slow to provide back pay which was the result of an executive order affecting military pay. In that case, the military had undertaken to provide the back pay, rather than challenging their obligation to pay, as DPS did in the instant case. Because the military branches had undertaken payment without a court order, the court found that a class action was unnecessary because the attorneys for the class members would be the only beneficiaries of certification. The order denying certification was found not to be an abuse of discretion. In the instant case, DPS denied its obligation to refund the reinstatement and additional fees until the Supreme Court's holding in *Sholer I*. Additionally, we must review the *grant* of certification for an abuse of discretion, rather than determine whether denial of certification would have been error.

**8.** See *Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 73 (S.D.Tex.1977) (Discussion of contingent fee agreements under Federal Rule 23 notes that courts generally have the power to override a contingent fee agreement and set a reasonable fee in class action cases. Class action cases warrant close judicial scrutiny of class counsel's fee, even if based on a contingency contract. Citing *Kiser v. Miller*, 364 F.Supp. 1311 (D.D.C. 1973); *United Federation of Postal Clerks v. United States*, 61 F.R.D. 13 (D.D.C.1973); *Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221 (N.D.Ill.1972). Court noted that strict adherence of a contingent fee agreement which extends to an unknown class may result in a conflict of interest); *King v. Armstrong*, 518 N.W.2d 336, 337 (Iowa1994) (Court reviews attorney fee awards made pursuant to a contingency agreement in a class action for an abuse of discretion. Factors to consider in awarding fees include the difficulty in obtaining class counsel, the complexity of the case and the likelihood of recovery by the class.).

been facilitated by Rule 23. (Footnotes omitted).

*Deposit Guaranty Bank, supra,* 100 S.Ct. at 1174.

¶ 15 Because the trial court will ultimately determine on remand whether to approve the fee agreement and whether to extend it to the whole class, we are unable at this stage to hold that this case will benefit class counsel more than the class members; particularly since we find that certification directly benefits class members by affording them judgment against DPS for claims which would not be practicable for the class members to bring individually.

¶ 16 DPS's final contention of error regarding the determination that § 2023(B)(3) was met is that there is no common issue of law or fact which predominates over individual issues and makes a class action superior to any other method of adjudication. DPS urges that the holding in Sholer I resolved legal and factual issues and that DPS is obligated to make the refund payments regardless of whether a class is certified. As discussed above, however, we find a common issue of law or fact remains and that the court did not abuse its discretion.

¶ 17 DPS's second proposition of error in its counter-appeal is that the trial court erred in awarding costs against it because it is a state agency. In its order certifying Class A, the trial court ordered that Sholer, et al. should recover their statutory costs as the prevailing parties. DPS relies on *State ex rel. Dept. of Highways v. Marshall,* 1974 OK 150, 530 P.2d 1023, for the general rule that the state is not liable for costs in the absence of an express statute. In *Marshall,* the state appealed an award of costs entered in an eminent domain case. The court quoted the general rule from 20 Am.Jur.2d Costs, § 32 that "a sovereign state, in suits to which it is a party in its own courts, is not liable for costs in absence of an express statute creating such liability .... it

cannot be implied from general statutes relating to costs ..."[9] The court noted that an eminent domain statute (69 O.S.1971 § 1203(f)) provided for the Department of Highways to pay costs so that the general rule was satisfied by the order of costs.

¶ 18 We note that other cases have wavered on this issue. *Grand River Dam Authority v. Grand–Hydro,* 188 Okla. 506, 111 P.2d 488, was also an eminent domain case which relied on a similar statutory provision that the state shall pay costs in eminent domain proceedings. However, the Court also held that a state agency has the power to sue and be sued like a private entity and should not be allowed to avail itself of the courts of the state but avoid the usual incidents of litigation which fall on private citizens.

¶ 19 The Oklahoma Supreme Court has held attorney fees and costs were correctly assessed against the state in a contract case pursuant to 12 O.S.1971 § 936, which does not expressly mention the state. *Commercial Communications, Inc. v. State ex rel. Oklahoma Bd. Of Public Affairs,* 1980 OK 93, 613 P.2d 473, 476. A more recent case involving the state held that 12 O.S.1991 § 936 did not apply because the action was not "on account, bills or contract," but the case did not note any distinction because of the state's involvement. *State of Oklahoma ex rel. Dept. of Public Safety v. $5,809.00,* 1991 OK CIV APP 82, 817 P.2d 750. Finally, *Williams & Kelley Architects v. Indep. School District No. 1, Okmulgee County,* 1994 OK CIV APP 113, 885 P.2d 691, held that costs should have been assessed against the state under 12 O.S.1991 § 936 without mention of the fact the award was against the state. These cases indicate that the general rule that a statute imposing costs on the state must expressly mention the state has been abandoned in Oklahoma. We find no error in the award of $3,938.26 in costs against DPS.

---

9. The quoted Am.Jur. Section also notes, however, an exception to the general rule: where a state sues or defends in a proprietary capacity, rather than governmental capacity, costs may be awarded. An action for the recovery of money has been held to be such a proprietary action.

*State v. McCoy,* 228 Minn. 420, 38 N.W.2d 386, 390 (1949). Additionally, where a state voluntarily becomes a litigant, it waives sovereign immunity and may be assessed costs as a private litigant would. 72 A.L.R.2d § 6.

¶ 20 Having found that the court did not abuse its discretion in certifying Class A and in granting costs to Sholer, et al. we do not afford relief to DPS on its counter-appeal. We now turn to the appeal of Sholer, et al. which asserts error in the trial court's denial of certification to Class B.

¶ 21 Sholer, et al. argue that the trial court erred in offering no explanation for its denial of Class B and that the denial of Class B violates class members' constitutional rights to due process and equal protection. Class A was defined as all drivers who paid multiple reinstatement fees and/or multiple additional fees after July 6, 1990 and before July 8, 1993. The trial court defined Class B as all drivers who paid multiple reinstatement fees and/or multiple additional fees after July 7, 1993. The trial order fails to offer explanation for the denial of Class B. Although DPS vigorously objected to certification of either class, DPS conceded that multiple additional fees were charged until May 26, 1995. Accordingly, the class of drivers who were required to pay unnecessary fees after July 7, 1993 is similarly situated to those in Class A. Certain named plaintiffs are members of Class B, so there is no standing issue involved here. We find the trial court abused its discretion because the grant of Class A and the denial of Class B, for no apparent reason, was arbitrary.

¶ 22 Further, because the denial of Class B was arbitrary, we can divine no rational basis for the decision. The proposed classes here are not suspect and we therefore review government action affecting them differently than others similarly situated for a rational basis only. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). DPS makes no offer of a rational basis for the disparate treatment of Class A and Class B. The dates provided for Class A are based on the date of the original class action petition filed by Sholer, et al. Nevertheless, it is undisputed that DPS continued to charge multiple fees for two more years. Yet, it is evident from Sholer I that all drivers who were incorrectly charged multiple reinstatement and/or additional fees are entitled to refunds and interest. Because the only distinguishing feature of the classes, the date, has no bearing on the satisfaction of the class certification requirements, we find the court abused its discretion in denying Class B.

¶ 23 This matter is remanded for proceedings consistent with this opinion.

¶ 24 AFFIRMED IN PART/REVERSED IN PART AND REMANDED.

¶ 25 GARRETT, J., dissents with separate opinion;

¶ 26 JOPLIN, J., concurs.

GARRETT, Judge: dissenting.

¶ 1 A party seeking certification of a class action has the burden of satisfying all four of the requirements prescribed by 12 O.S.1991 § 2023(A), and at least one of the criteria prescribed by 12 O.S.1991 § 2023(B).[1] In this

---

1. 12 O.S.1991 § 2023 provides in pertinent part:

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
    1. The class is so numerous that joinder of all members is impracticable;
    2. There are questions of law or fact common to the class;
    3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    4. The representative parties will fairly and adequately protect the interests of the class.
B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:
    a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
    b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
    2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

case, it is uncontroverted the only matter remaining is the proper payment and distribution of funds lawfully due to various persons pursuant to Oklahoma statutes. While the decision in *Sholer I* is important, each person's claim for refund must be individually evaluated. In my opinion, Appellants cannot satisfy the requirement of § 2023(A)(2) I hold it was error for the court to certify Class A. We should hold the trial court correctly denied certification of a "Class B".

¶ 2 While the failure to meet the requirements of § 2023(A is sufficient to deny certification of Class A or Class B, I note Appellants failed to establish that any one of the requirements of § 2023(B has been satisfied. In particular, Appellants failed to show that a class action is superior to other available methods for the fair and efficient adjudication of whatever controversy exists. See § 2023(B)(3). The evidence revealed that DPS would voluntarily pay all refunds required under Sholer I without class certification, subject only to availability of funds, and already had paid hundreds of claims.

¶ 3 In support of its decision to allow class action, the majority states "DPS argues that its commissioner testified that DPS planned to voluntarily provide the refunds and that therefore, a class action is unnecessary. However, the evidence indicated that, while DPS had undertaken to provide refunds for 1,300 potential class members, DPS had not received an appropriation for the five million dollars it estimated would be required to provide refunds to all who overpaid reinstatement or additional fees." However, in direct contradiction, the majority states later in its opinion "The trial court correctly noted that the source of the refunds was not relevant to the issue of certification. How to pay a judgment entered against it is a matter for DPS determination after judgment." I agree with the second statement. It is not within

the purview of the judiciary to "legislate" where or how DPS will pay the refunds. We must not base our decision on the question of how payments may be paid. The power to make appropriations (or failure to do so has been delegated to the Legislature by our Constitution, and courts have no authority to inquire into motives of the Legislature. Oklahoma Const. Art. 10, §§ 2, 23. See, *Davis v. Childers*, 1937 OK 728, 181 Okla. 468, 74 P.2d 930.

¶ 4 In *Sholer I*, the Supreme Court held the trial court erred when it certified the case as a class action without first conducting an evidentiary hearing to determine whether the statutory grounds existed. That case was remanded with directions to the court to hear evidence before certifying or refusing to certify the class. There was no latent edict in *Sholer I*, to hold that a class action was warranted.

¶ 5 I respectfully dissent.

---

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
  a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
d. the difficulties likely to be encountered in the management of a class action.